STATE OF NORTH CAROLINA v. GLENN JUNIOR POTTS

No. 8317SC125

(Filed 15 November 1983)

1. **Criminal Law § 138— aggravating factor that defendant took advantage of position of trust—properly submitted**

    In a sentencing hearing upon defendant's plea of guilty to second degree murder, the trial court properly considered as an aggravating factor that defendant took advantage of a position of trust and confidence to commit the offense. The evidence tended to show that deceased was referred to as one of defendant's "best friends," that minutes prior to the shooting deceased told defendant, "I thought we were friends," and defendant responded that they were; that deceased stated, "Well, we've been just like brothers. So why are you trying to mess over me?"; that after deceased was asked to leave, deceased indicated that he was going to stay because he knew defendant would not hurt him.

2. **Criminal Law § 138— aggravating factor that victim mentally infirm at time killed—properly submitted**

    In a sentencing hearing upon defendant's plea of guilty of second degree murder, the trial court properly found as an aggravating factor that the victim was mentally infirm at the time he was killed where the evidence tended to show that defendant and deceased spent a short period of time drinking beer, wine and almost a fifth of vodka, smoking marijuana and taking quaaludes;

during this time and while in defendant's presence, deceased crushed a glass in his hand and smashed a chair against the wall; after deceased and defendant began fighting, deceased twice told defendant to shoot him; and deceased refused to leave the trailer park after defendant obtained his shotgun. Further, it would be unreasonable and unfair to allow defendant's intoxication to be considered a mitigating factor but not to allow the victim's intoxication to be an aggravating factor. G.S. 15A-1340.4(a)j.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 18 October 1982 in Superior Court, SURRY County. Heard in the Court of Appeals 18 October 1983.

Defendant was indicted for the first degree murder of Terry Craig Tilley. Defendant pleaded guilty to second degree murder, and in return, the State agreed to dismiss two related kidnapping charges.

The State offered evidence at the lengthy sentencing hearing tending to show that on the evening of 19 March 1982 Tilley and his girlfriend, Lisa Bowman, visited Brenda Gwen at her trailer in Mount Airy, North Carolina. Defendant and his brother were at the trailer. Defendant and Tilley sat around listening to music and drinking vodka. Around 7:00 p.m. the two women left the trailer and returned an hour later with marijuana and quaaludes. They gave the drugs to defendant and Tilley. Defendant then began arguing with Gwen and threatened to kill her. Bowman became alarmed and ran to get Tilley. Tilley had earlier left the trailer and was attempting to crank defendant's van. Tilley returned to the trailer and asked defendant why he was threatening Gwen. Defendant replied that Gwen had not cashed a check for him. Tilley and defendant then began arguing about the check, and Tilley slapped defendant's face. Defendant indicated he was leaving, but Tilley suggested they talk and promised not to hit him again.

Tilley's brother ran to a nearby trailer and asked Bobby Beck to break up the fight between defendant and Tilley. When Beck reached Gwen's trailer, Tilley had his fist balled up and said, "I am fixing to eat both of you (Beck and defendant) up." Defendant then ran to Beck's trailer. Tilley and Beck followed. Defendant grabbed a shotgun from under Beck's couch, and Tilley began struggling with him. Tilley then backed off, unbuttoned his shirt and told defendant to shoot him. Discovering that the shotgun

was not loaded, defendant asked Beck for shells. Beck responded that he had none. Tilley was then persuaded to leave the trailer. After Tilley left, defendant demanded that Beck give him his pistol. Defendant walked to the porch of the trailer with the pistol in his hand. Tilley was standing outside. He dropped his arms and told defendant, "Go ahead and kill me if that is what you want." Defendant fired at Tilley five or six times. He then walked over to Tilley's body and began beating him in the face with the pistol. Defendant returned to Beck's trailer and wiped blood from his hands. Several minutes later, he walked outside and again started beating Tilley's face.

Defendant presented evidence that he and Tilley began drinking wine and beer around 2:00 p.m. on 19 March 1982. Later in the day they shared a fifth of vodka, smoked marijuana and swallowed quaaludes. Defendant's former probation officer testified that defendant cooperated with him during his probation period. Defendant had been on probation for driving under the influence and two felonious assault convictions. There was further testimony that defendant's drinking increased when he lost his job a month before Tilley's murder.

After considering the foregoing evidence the sentencing judge found the following aggravating factors pursuant to G.S. 15A-1340.4(a)(1):

10. The victim was very young, or very old, or mentally or physically infirm.

14. The defendant took advantage of a position of trust or confidence to commit the offense.

15. The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement.

The following mitigating factor was found pursuant to G.S. 15A-1340.4(a)(2):

4. The defendant was suffering from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense.

After concluding that the aggravating factors outweighed the mitigating factor, the judge sentenced defendant to 40 years. From this sentence, defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Kaye R. Webb, for the State.*

*W. David White, by W. David White, for defendant appellant.*

ARNOLD, Judge.

Defendant assigns as error the first two aggravating factors found by the court and the court's failure to find more than one mitigating factor. After careful examination of both the evidence introduced at the sentencing hearing and the recent application of the Fair Sentencing Act, we conclude that the sentence is supported by the evidence and must be affirmed.

Under the Fair Sentencing Act, the sentencing judge's discretion to impose a sentence greater or lesser than the presumptive term is bridled by the statutory requirement that he make written findings of aggravating and mitigating factors. The judge may consider such factors "that he finds are proved by the preponderance of the evidence, and that are reasonably related to the purpose of sentencing . . . ." G.S. 15A-1340.4(a). *See State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983). "The trial judge should be permitted wide latitude in arriving at the truth as to the existence of aggravating and mitigating circumstances, for it is only he who observes the demeanor of the witnesses and hears the testimony." *Id.* at 596, 300 S.E. 2d at 697. We find that this standard of review was properly applied in the case now before us.

[1] Defendant argues that the court erred in finding as an aggravating factor that he took advantage of a position of trust and confidence to commit the offense. In making this finding the judge commented, "Your friend trusted you, he opened his hands to you and said, 'Come on, kill me. I don't think you will do it.'" Defendant points out that our appellate courts have upheld a finding of this aggravating factor in one instance: where the defendant was charged with attempted rape of his ten year old stepdaughter. *State v. Goforth,* 59 N.C. App. 504, 297 S.E. 2d 128 (1982), *reversed and remanded for resentencing on other grounds,* 307 N.C. 699, 307 S.E. 2d 162 (1983). He argues that the fact that he and Tilley knew each other while serving time in prison and that

Tilley urged defendant to kill him immediately before the shooting, is not sufficient evidence of a relationship which would inspire confidence or trust.

Throughout the sentencing hearing witnesses testified that defendant and Tilley were good friends. Bobby Beck referred to Tilley as one of defendant's "best friends." Brenda Gwen testified that minutes prior to the shooting Tilley told defendant, "I thought we were friends." Defendant responded that they were. Tilley then stated, "Well, we've been just like brothers. So why are you trying to mess over me?" Defendant's brother testified that after Tilley and defendant struggled over the shotgun, he asked Tilley to leave. Tilley indicated that he was going to stay because he knew defendant would not hurt him.

The foregoing evidence was sufficient for the court to find that because of the defendant's and Tilley's friendship, Tilley trusted defendant not to kill him. Defendant violated this position of trust.

[2] Defendant next argues that the sentencing judge erred in finding as an aggravating factor that the victim was mentally infirm at the time he was killed. The judge noted that the preponderance of the evidence showed that Tilley was drunk and defendant knew it. Defendant, however, urges this Court to find that voluntary intoxication of the victim is not included within the definition of mental infirmity as it applies to G.S. 15A-1340.4(a)(1)j. The word "infirm" is not defined in this statute. Webster's New Collegiate Dictionary (1977) defines "infirm" as "weak of mind, will or character." The evidence presented comports with this definition.

The evidence at the sentencing hearing was that defendant and Tilley spent a short period of time drinking beer, wine and almost a fifth of vodka, smoking marijuana and taking quaaludes. During this time and while in defendant's presence, Tilley crushed a glass in his hand and smashed a chair against the wall. After Tilley and defendant began fighting, Tilley twice told defendant to shoot him. He refused to leave the trailer park after defendant obtained a shotgun. This evidence clearly shows that Tilley's capacity to recognize the danger of the situation, and to therefore remove himself, was weakened by his intoxication. It is

also uncontradicted that defendant was aware of Tilley's intoxicated condition.

Intoxication of the defendant has been recognized as a mitigating factor by the courts under G.S. 15A-1340.4(a)(2)d: "The defendant was suffering from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense." In fact, the sentencing judge here found this to be a mitigating factor. It would be both unreasonable and unfair to allow defendant's intoxication to be considered a mitigating factor but not to allow the victim's intoxication to be an aggravating factor. Clearly the Legislature did not intend this result.

Defendant's remaining assignments of error involve the failure of the sentencing judge to find that the victim was a voluntary participant in the crime; that defendant committed the crime under duress, threat or compulsion and which significantly reduced his culpability and that defendant's immaturity or limited mental capacity reduced his culpability. We find no merit to these assignments of error.

In a recent decision the North Carolina Supreme Court found that under the Fair Sentencing Act, the judge is required to find factors proved by uncontradicted and manifestly credible evidence. *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983). Here, there is no such evidentiary support for a finding that the victim was a voluntary participant in the shooting. The evidence shows that Tilley was unarmed at all times. We also find no error in the court's refusal to find that defendant committed the murder under duress, coercion, threat or compulsion or that defendant's immaturity and limited mental capacity significantly reduced his culpability. The preponderance of the evidence shows and the judge found that defendant's culpability was reduced solely by his intoxicated condition.

Defendant has failed to show prejudicial error in his sentencing hearing, and the judgment is

Affirmed.

Judges HILL and BRASWELL concur.