STATE OF NORTH CAROLINA v. BILL CARROLL, JR.

No. 8616SC1090

(Filed 19 May 1987)

**1. Homicide § 21.2— second degree murder—proof of corpus delicti**

The State's evidence was sufficient to support a finding by the jury that deceased was the victim of a murder rather than an accident where it tended to show that deceased was found barely alive on a country dirt road some 125 to 250 feet from the paved road; he suffered at least three separate blows to the head, with blows on each side of his head and one blow ripping his ear almost off; he had a "tear" on one of his arms; his money, knife and jewelry were missing; and defendant stated to his cellmate that "he'd like to do to that damn Keith Stone what he done to that damn hobo they got him accused of killing."

**2. Homicide § 21.7— second degree murder—proof of defendant's guilt as perpetrator**

The State's evidence was sufficient to show that defendant was the perpetrator of a second degree murder where it tended to show that the victim was last seen in the company of defendant in defendant's blue car; a blue or green car was seen on a deserted road early in the morning only a short time before the victim's body was found beside the road; a tire impression underneath a bloodstain on the road was similar to the tread on defendant's car; detectives discovered items in defendant's car with Type O blood on them which was consistent with the victim's blood type but inconsistent with that of defendant; defendant was in possession of a knife which had belonged to the victim; and defendant stated to a cellmate that "he'd like to do to that damn Keith Stone what he done to that damn hobo they got him accused of killing."

**3. Homicide § 21.7— malice—intent to kill—sufficiency of evidence**

Evidence tending to show that deceased received three strong blows to different parts of the head and that one blow was severe enough to tear

deceased's ear almost completely off was sufficient to establish malice and intent to kill in a second degree murder case.

**4. Criminal Law § 138.27— aggravating factor—position of trust or confidence— insufficient evidence**

Evidence was insufficient to support the trial court's finding as an aggravating factor for second degree murder that defendant took advantage of a position of trust or confidence where it showed that defendant and the victim had met only a day and a half before the victim was found dying by the side of a country road after the victim had decided to take a trip with defendant in defendant's car.

APPEAL by defendant from *Williams (Fred J.), Judge.* Judgment entered 5 June 1986 in ROBESON County Superior Court. Heard in the Court of Appeals 30 March 1987.

On 10 March 1986, defendant was indicted on a charge of second-degree murder. Defendant pleaded not guilty, and the matter was heard before a jury. Evidence for the State tended to show the following events and circumstances.

Glennie Tucker testified that she had been married to Wallace Tucker for approximately seven months at the time of his death. She was the manager of the Merry Inn Hotel in Monroe at the time these events occurred. On 11 April 1985, defendant rented a room at the hotel. Her husband talked with defendant during his stay. At 4:00 or 5:00 p.m. on 12 April, defendant and her husband left in defendant's car; her husband told her that he was going with defendant to the races in Darlington and would be back Sunday. When he left, Tucker had about $200 with him in a brown wallet. He was also wearing a white quartz watch and a necklace he had won in a fishing tournament.

The State introduced an exhibit which Ms. Tucker identified as defendant's hotel registration card; on it appeared defendant's name and a Florida address. It also gave the make of defendant's car as a Chevrolet and the tag number as Florida plate VBK-078. Defendant himself had filled out the registration card; Ms. Tucker had never actually seen the license plate. She had, however, seen the car which she first testified was a Chevrolet, then a Chrysler. She stated that the car was blue.

Early on the morning of 13 April, between 6:00 and 6:30, James R. McCullum was driving on Highway 301 south of Rowland. As he passed through the area near Reeves Livestock, a car

pulled out in front of him. He remembered that it was either a Dodge or a Plymouth and that it was blue or green. There were two men inside the car.

On that same morning, at about 6:30, Oscar Ratley was driving with his wife on Highway 301. As they passed a dirt road near Reeves Livestock, Mr. Ratley saw someone lying on the dirt road about 125 feet from the main highway. He backed up and stopped to take a look, flagging down a passing motorist who reported it to the police. Chief of Police Daniel Bradsher of the Rowland Police Department went to investigate. Perhaps 250 feet from the highway, a white male was lying on the dirt road with his feet partially in the ditch area. He had lost a considerable amount of blood from his head, but he was still alive. His pockets contained no wallet or ID, nor was he wearing a watch or jewelry. The rescue squad arrived and took the man to the hospital. Bradsher remained at the scene until Detective Jimmy Maynor of the Sheriff's Department arrived.

Dr. Raymond Satler, a neurosurgeon, treated the man at Southeastern General Hospital in Lumberton. The man was in a deep coma. There was evidence of trauma to both sides of the head; Dr. Satler declined to speculate as to the source of the trauma, only saying that it was some "very large force applied to the skull." One ear was almost entirely torn off. A CT scan revealed a very large blood clot on the right side of the brain. Dr. Satler opened up the skull in order to remove the clot and try to stop the bleeding. However, the next morning, the man was pronounced brain-dead and removed from the respirator.

Associate Chief Medical Examiner Dr. John Butts performed the autopsy. He testified that at least three blows had been given to the head, and there was one tear on his arm which had been sewn up. Dr. Butts testified that the blunt force traumas to the head caused the man's death, but he did not offer an opinion as to what might have caused the injuries.

Detective Jimmy Maynor conducted the investigation of the area in which the body was found. He saw a bloodstain on the left side of the road and a tire impression underneath the stain. He identified a photograph introduced by the State as a close-up of the stain and tire impression. After running a check on the man's fingerprints, he learned that the man was Wallace Tucker. He

made inquiries about the license plate number on the registration card he obtained from Ms. Tucker, and he and SBI Agent Lee Sampson flew to Crestview, Florida. Accompanied by Sgt. Barbry of the Okaloosa County Sheriff's Department, the officers went to a local residence where they conducted a consensual search of a 1968 blue Chrysler with the license plate matching that on the card. The officers removed soil, red scrapings, a metal screw and hair fiber from the floorboard. They also took a seatback cover, a seatbelt, a portion of carpet, some molded plastic and a white switchblade knife. Agent Brenda Dew of the SBI laboratory tested these items for the presence of blood. The soil contained no blood, but the metal screw, the scrapings from the floorboard, the carpet, the plastic molding and the seatbelt all had traces of Type O blood, the same as that of Wallace Tucker. Defendant has Type A blood. The State also introduced a photograph of the tread design on the left front tire of the Chrysler.

Bill Sipes testified that Wallace Tucker was his brother-in-law. He stated that the white switchblade knife had belonged to Tucker and that he could positively identify it because it was quite unusual and he had offered to buy it from Tucker.

Clarence Pruitt, an inmate of the Robeson County Jail on 30 January 1986, was allowed after *voir dire* to testify as to statements made to him by defendant. He related that defendant was upset about a jail-cell shakedown, and defendant said angrily that "he'd like to do to that damn Keith Stone what he done to that damn hobo they got him accused of killing."

The jury found defendant guilty as charged. From the judgment and sentence of 45 years imprisonment, defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Jeffrey P. Gray, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender David W. Dorey, for defendant-appellant.*

WELLS, Judge.

Defendant contends that, even taken in the light most favorable to the State, the evidence is insufficient to support a conviction of second-degree murder. Defendant argues several points, which we shall address in turn.

In order to withstand a motion to dismiss, the State must present substantial evidence of each of the elements of the offense charged. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Our courts have interpreted "substantial evidence" to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). Evidence which raises merely suspicion or conjecture that the crime was committed or that defendant committed it is not sufficient, even if the suspicion is a strong one. *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971). However, a defendant may be convicted on purely circumstantial evidence; the question is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978); *State v. Head*, 79 N.C. App. 1, 338 S.E. 2d 908, *disc. rev. denied*, 316 N.C. 736, 345 S.E. 2d 395 (1986). Once this threshold is met, it is for the jury to decide whether "the acts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Head, supra.*

[1] Defendant first asserts that the State has not carried its burden of showing that Wallace Tucker is the victim of murder rather than, for example, the victim of an accident. We disagree.

In any criminal case, the State must show that a crime was committed and that the defendant committed the crime. *Earnhardt, supra; Head, supra.* The evidence that a crime was committed is often referred to as the *corpus delicti*, literally "the body of the transgression charged." *State v. Dawson*, 278 N.C. 351, 180 S.E. 2d 140 (1971); *Head, supra.* This in turn consists of two requirements in homicide cases: (1) there must be a corpse or circumstantial evidence so strong and cogent that there can be no doubt of the death, and (2) the criminal agency must be shown. *Dawson, supra; Head, supra.* Here, defendant does not contest the identity of the body, but does question whether a reasonable inference that Wallace Tucker was murdered may be drawn from the circumstances in this case. Tucker was found — barely alive — on a country dirt road, his feet in the ditch area. He was between 125-250 feet from the main paved road. He suffered at least three separate blows to the head, with blows on each side of his head. One blow ripped his ear almost off. He also had what the doctors characterized as a "tear" on one of his arms. His money, jewelry, knife and watch were gone. These undisputed facts, coupled with

State v. Carroll

defendant's admission in the form of a statement to his cellmate that "he'd like to do to that damn Keith Stone what he done to that damn hobo they got him accused of killing," are sufficient to support a finding that the crime charged occurred. *See State v. Trexler*, 316 N.C. 528, 342 S.E. 2d 878 (1986).

[2] We now consider whether the evidence that defendant himself committed the crime is sufficient to take the case to the jury. Tucker was last seen in the company of defendant in defendant's blue car. A witness placed a blue or green Plymouth or Dodge at the scene on a deserted road early in the morning, perhaps half an hour before Tucker was found. The State's introduction of the tire tread at the bloodstain and of the tire tread of the left front tire of defendant's car strengthened this evidence. Detectives discovered items in defendant's car with Type O blood on them, consistent with Mr. Tucker's blood type but inconsistent with defendant's. Defendant was in possession of a knife which had belonged to the victim; Tucker's brother-in-law stated that he tried to buy the knife from him. Defendant's statement to his cellmate, although somewhat ambiguous, did indicate that he physically harmed Tucker. Accordingly, the evidence of the *corpus delicti* and the defendant's identity as the one committing the crime was sufficient to take the case to the jury.

[3] Defendant also argues that the State has failed to show the requisite malice with intent to kill. We disagree. Malice sufficient to support a conviction of second-degree murder may be proven by inference from circumstances surrounding the killing. *State v. Batts*, 303 N.C. 155, 277 S.E. 2d 385 (1981). Here, with evidence of three strong blows to different sides of the head, one severe enough to tear the victim's ear almost completely off, was sufficient to establish malice and intent to kill.

In his second assignment of error, defendant contends that the court erred in finding as a factor in aggravation that defendant violated a position of trust or confidence in murdering Wallace Tucker. We agree.

[4] The presumptive term for second-degree murder is fifteen years. The trial court sentenced defendant to a term of forty-five years as a result of two factors found in aggravation: first, that defendant had prior convictions, and second, that defendant took advantage of a position of trust and confidence. The State argues

that the finding in aggravation that defendant violated a position of trust is supported by the long history of the special duties owed by drivers to passengers in their cars. However, we find no support in the law of sentencing for this position. In the two cases in which our courts have upheld a finding of this aggravating factor, the defendant and the victim have been either relatives or two men who were "best friends." *See State v. Potts*, 65 N.C. App. 101, 308 S.E. 2d 754 (1983), *disc. rev. denied*, 311 N.C. 406, 319 S.E. 2d 278 (1984) (defendant and victim characterized as "best friends"); *see also State v. Goforth*, 59 N.C. App. 504, 297 S.E. 2d 128 (1982), *reversed and remanded on other grounds*, 307 N.C. 699, 397 S.E. 2d 162 (1983) (defendant charged with attempted rape of his 10-year-old stepdaughter). In the case at bar, defendant and Tucker had met only a day and a half before Tucker was found; the evidence shows only that the two men talked and that Tucker decided to ride down to Darlington with defendant in defendant's car. We therefore find that there is no evidence to support the trial court's finding as a factor in aggravation that defendant took advantage of a position of trust or confidence, and we remand this case for resentencing.

No error in the trial; remanded for resentencing.

Chief Judge HEDRICK and Judge BECTON concur.