STATE v. HAMMOND

[118 N.C. App. 257 (1995)]

———————

STATE OF NORTH CAROLINA v. DOUGLAS HAMMOND

No. 945SC377

(Filed 21 March 1995)

**1. Criminal Law § 1177 (NCI4th)— violation of position of trust—acquaintance through work—insufficiency of evidence of aggravating factor**

In a prosecution of defendant for first-degree rape, first-degree sexual offense, and first-degree kidnapping, the trial court erred in finding as an aggravating factor that defendant took advantage of a position of trust where the evidence tended to show that the only relationship between the victim and defendant was a relationship of having worked at the same place of employment.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**2. Criminal Law § 1123 (NCI4th)— kidnapping—aggravating factor of premeditation and deliberation—sufficiency of evidence**

The trial court in a kidnapping case did not err in finding as an aggravating factor that the kidnapping was premeditated and deliberated where the evidence tended to show that defendant waited by the victim's office during the early morning hours and that he had scissors and an electrical cord.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal by defendant from judgment entered 23 July 1993 by Judge James D. Llewellyn in New Hanover County Superior Court. Heard in the Court of Appeals 31 January 1995.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Mabel Y. Bullock, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

JOHNSON, Judge.

Defendant Douglas Hammond was indicted for first degree rape, first degree sexual offense, first degree kidnapping, and armed robbery. Defendant was tried on his pleas of not guilty during the 20 July 1993 session of New Hanover Superior Court.

Evidence presented at trial showed the following: Kimberly Winn, a social worker at Southeastern Mental Health, testified that her office was located in Wilmington, North Carolina, at the intersection of Market and 16th Streets. She knew defendant at the time because he had been working as a driver for the Center. There were nine employees in all at the Center.

Ms. Winn testified that on Monday, 30 November 1992, she arrived at work at approximately 7:30 a.m. in her 1993 Mazda; that when she pulled into the parking lot, she noticed defendant coming toward her; that defendant approached her and told her his car had broken down and that he had been waiting for a tow truck; and that defendant asked her if she would take him back over to his car and she agreed to do so. She testified further that the two drove to the area where the car was supposed to be; that when they arrived at the location, defendant hesitated and said that the tow truck must have already gotten his car; that she told him that she would help him get his car, and he told her the car would be at the Greenfield Body Shop and it would help if she could take him there; and that defendant gave her directions and they ended up driving near the State Port. She continued, that as the two drove onto an isolated stretch of road, defendant grabbed her by her shoulder, held a pair of scissors up to her throat, and told her to pull over; that the scissors looked similar to scissors used at her workplace; that she pulled over to a soft shoulder of the road and her car would not go further; that she screamed and tried to get out of the car; that defendant pulled her back into the car and told her, "[D]on't do that"; and that defendant seemed very angry and

**STATE v. HAMMOND**

[118 N.C. App. 257 (1995)]

aggressive and tried to bind her hands with a piece of yellow electrical cord with the plug still attached.

Ms. Winn testified further that defendant forced her into the passenger side of the car; that defendant drove the car to a nearby dirt road and ordered her to take off some clothes; that defendant lifted up her blouse and her bra, inserted his finger into her vagina, and attempted to penetrate her vagina with his penis but he was not erect and was unable to do so; that defendant then stretched the cord tight across her throat; that she then got the cord off but defendant put his forearm against her throat; and that she struggled out of that grasp and defendant put his thumb against her throat but then defendant abruptly stopped. Ms. Winn stated that defendant then told her a long story about his personal problems; that she got back in the driver's seat and from this position, when defendant moved, she could see the scissors and the cord in the passenger seat, behind defendant; that she offered defendant money in an attempt to appease him; that defendant threw the cord out of the window and continued to converse with her; that defendant decided to drive and took her to a different isolated dirt road; that the scissors were now under the driver's seat; and that when the two were at an isolated spot, defendant told her to lift up her skirt and that she resisted but defendant inserted his penis into her vagina. Finally, she testified that afterwards, defendant wanted her to walk with him but she refused to get out of the car; that as a truck pulled onto the road, defendant started driving again; that defendant told her he was taking her to the hospital; that he drove to the hospital and went to the visitor's area but did not stop; and that when she got the opportunity, she jumped out of the car, ran to a nearby business and the police were called.

On cross-examination, Ms. Winn testified that as far as she could remember, defendant was neat in his appearance; that after initially seeing the scissors when defendant held them to her throat, she did not see them again until she saw them on the seat behind defendant; that when defendant tried to turn off the car's flashers, she reached and got the scissors and hid them under the front seat; that even though the scissors were hidden at the time she was penetrated vaginally by defendant's penis, she was still scared and she thought defendant might find the scissors; and that she knew defendant's strength was superior to hers and that he might try to strangle her.

Other witnesses for the State testified as to Ms. Winn's appearance after the incident, her recollection of the incident, and physical evidence found at the scene of the incident.

Officer Rodney Simmons of the Wilmington Police Department, one of the initial investigators, testified that the evening of the incident he was informed that defendant was at the police station, that he went to the station and found Ms. Winn's car there, and that he spoke with defendant for a few minutes and did not see any scratches or bruises or smell any alcohol on defendant. Officer Wayne Norris testified that defendant came into the police station about 8:00 p.m. and asked if there were any outstanding warrants for him; that he asked defendant what the subject of the warrants would be and defendant said for kidnapping and sex offense; that he took defendant to a back room and called for a warrant; that while he and defendant waited for the warrant, he read defendant his rights; that defendant orally waived his rights and never asked for an attorney; and that he asked defendant if he did it and defendant said, "Well, I'm not denying it. I knew I shouldn't have not [sic] done it." Officer Norris testified further that defendant told him that the car that was involved was a Mazda, that defendant told him he did not know where the scissors were and that he had thrown them away, and that defendant did not appear to be intoxicated or confused. Officer Norris also testified that when he asked defendant if he "did it" defendant did not know what was in [Officer Norris'] head, and that there had been no previous discussions of specific behavior. Defendant was arrested and processed.

Defendant testified that on Saturday, 29 November 1992, defendant and a friend ingested large quantities of crack cocaine, beer, and hard alcohol; that he went to work on Monday morning and before doing so, he took another hit of crack cocaine; that his intention was to go to the office, leave a note for his supervisor, and go home; that he did not have his office keys with him and so he waited outside until someone came up; that Ms. Winn drove up and he asked her to take him to a friend at 5th and Market Streets to get his car; and that his friend was not there so he asked Ms. Winn to take him to his friend's place of business. Defendant testified further that he and Ms. Winn tried to turn the car around but it got stuck in the sand; that he moved the car out of the sand and they drove on their way; that when they got to the dirt road near the pump station described earlier by Ms. Winn he told her he wanted to have sexual intercourse and told her to take off her stockings and pull up her skirt; that she did so and he tried to penetrate her but he could not get an erection; and that he

never threatened Ms. Winn with scissors and she never tried to stop him or fight him.

Defendant continued that when he could not become erect, he became angry and began choking Ms. Winn and that he tried to use the yellow electrical cord; that she did not try to get out of the car; that they talked; that he panicked when he saw another car and drove her to another spot; that he threw the cord out of the window to let Ms. Winn know he would not cause any more violence; that he again attempted to have sex with Ms. Winn but was unable to maintain an erection and never penetrated her; and that she never resisted him. Finally, defendant testified that after seeing another car, they left the area; that he noticed her neck and told her he would take her to a hospital; that when they got near the hospital, he stopped at a stop sign and Ms. Winn jumped out of the car; that he panicked and abandoned Ms. Winn's car at a nearby shopping area; that he learned his picture was on the police channel on television; and that he took another hit of crack cocaine, got Ms. Winn's car and drove to the police station where he turned himself in. Defendant testified that at the station, he told Officer Norris that he thought he was in trouble and he was afraid, and that he did not give any statements to Officer Norris or Officer Simmons.

Defendant was found guilty of first degree rape, first degree sexual offense, and first degree kidnapping. Defendant has appealed to our Court with arguments based on two assignments of error relating to the sentencing hearing.

[1] Defendant first argues that the trial court erred in finding as an aggravating factor that defendant took advantage of a position of trust because the evidence did not support the finding. Defendant notes that "the victim and the perpetrator are acquaintances but nothing more."

This aggravating factor is found pursuant to North Carolina General Statutes § 15A-1340.16(d)(15) (Cum. Supp. 1994). "The existence of this aggravating factor is premised on a relationship of trust between defendant and the victim which causes the victim to rely upon defendant." *State v. Farlow*, 336 N.C. 534, 542, 444 S.E.2d 913, 918 (1994). This aggravating factor has been previously found as to familial relationships (i.e., brother-brother, *see State v. Baucom*, 66 N.C. App. 298, 311 S.E.2d 73 (1984), and husband-wife, *see State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991)). This aggravating factor has also been applied when the relationship between the defendant

and the victim was one of best friends. *See State v. Potts*, 65 N.C. App. 101, 308 S.E.2d 754 (1983), *disc. review denied*, 311 N.C. 406, 319 S.E.2d 278 (1984). However, our Supreme Court did not apply this factor when the relationship between the defendant and the victim was that of a drug dealer and a customer. *See State v. Erlewine*, 328 N.C. 626, 403 S.E.2d 280 (1991). The Court stated, "[t]o apply [this] aggravating factor to an ongoing criminal conspiracy between a drug dealer and his customer would give the aggravating factor an application so broad that it would retain little meaning." *Id.* at 638, 403 S.E.2d at 286. Likewise, our Court did not apply this factor in *State v. Carroll*, 85 N.C. App. 696, 355 S.E.2d 844, *disc. review denied*, 320 N.C. 514, 358 S.E.2d 523 (1987), where the defendant and the victim had met only one and a half days before the murder and decided to take a trip in the defendant's car.

Although we believe this statutory aggravating factor can arise within the context of the work environment, the evidence here indicates that the only relationship between the victim, Ms. Winn, and defendant, was a relationship of having worked at the same place of employment. Ms. Winn was a social worker at Southeastern Mental Health, and defendant had been a driver for the Center for three months. Ms. Winn testified that defendant had driven a van that Ms. Winn, children from the Center, and other staff had been in at least five times. This evidence shows only that the victim was acquainted with defendant. We do not believe the relationship between the victim and defendant in this case rose to a relationship of trust "that cause[d] the victim to rely upon defendant." *See State v. Midyette*, 87 N.C. App. 199, 360 S.E.2d 507 (1987), *aff'd*, 322 N.C. 108, 366 S.E.2d 440 (1988) (evidence that the victim and the defendant met a month before the sexual offenses, at which time the defendant came to the victim's home for a New Year's Eve breakfast and slept on the living room sofa, showed only that the victim was acquainted with the defendant and did not show the existence of a relationship through which the defendant would occupy a position of trust and confidence). Therefore, we find that the trial court erred in finding as an aggravating factor that defendant took advantage of a position of trust.

[2] Defendant next argues that the trial court erred in finding as an aggravating factor that the kidnapping was premeditated and deliberated because the factor was not supported by the evidence and therefore violated North Carolina General Statutes § 15A-1340.16 (Cum. Supp. 1994) to the prejudice of defendant. We disagree. "As long as

they are not elements essential to the establishment of the offense . . . all circumstances which are transactionally related to the . . . offense and which are reasonably related to the purposes of sentencing must be considered during sentencing." *State v. Melton*, 307 N.C. 370, 378, 298 S.E.2d 673, 679 (1983). "The presence of premeditation and deliberation is important in elevating culpability for violent crimes." *State v. Smith*, 92 N.C. App. 500, 503, 374 S.E.2d 617, 619 (1988), *disc. review denied*, 324 N.C. 340, 378 S.E.2d 805 (1989). Previous decisions have allowed as a nonstatutory factor that a violent offense was premeditated and deliberated. *Id.* In the case *sub judice*, evidence that defendant waited by Ms. Winn's office during the early morning hours of 30 November 1992 and that defendant had scissors and an electrical cord is evidence of premeditation and deliberation. We reject this assignment of error.

Because we have found that the trial court erred in finding and considering as an aggravating factor that defendant took advantage of a position of trust, we remand this case for a new sentencing hearing. *See State v. Whitley*, 111 N.C. App. 916, 433 S.E.2d 826 (1993) and cases cited therein.

Remanded.

Judges JOHN and MARTIN, MARK. D. concur.