STATE OF NORTH CAROLINA v. CHARLES GILBERT MURPHY

No. COA01-695

(Filed 20 August 2002)

## 1. Sentencing— aggravating factor—took advantage of position or trust or confidence—false pretenses

The trial court did not err in obtaining property by false pretenses cases (98CRS 72458-72461) arising out of defendant's loan brokering scheme by finding as an aggravating factor under N.C.G.S. § 15A-1340.16(d)(15) that defendant took advantage of a position of trust or confidence to commit the offenses, because: (1) the evidence of defendant's loan brokering scheme demonstrates the existence of a relationship between defendant and the victims generally conducive to reliance of one upon the other; and (2) defendant held himself out as a legitimate businessman with the ability to obtain financing for loans for the victims, and the victims placed great trust and confidence in defendant that he would follow through on his representation and not defraud them of their money.

## 2. Sentencing— aggravating factor—took advantage of position or trust or confidence—false pretenses— embezzlement

The trial court erred in an obtaining property by false pretenses case (98CRS 30353) involving the Swim Association by finding as an aggravating factor under N.C.G.S. § 15A-1340.16(d)(15) that defendant took advantage of a position of trust or confidence to commit the offense, and the case is remanded for resentencing, because: (1) the relationship between defendant and the Swim Association presents a classic case of embezzlement which is the wrongful conversion of property which was initially acquired lawfully pursuant to a trust relationship, whereas false pretenses is the unlawful acquisition of property pursuant to a false representation; (2) N.C.G.S. § 14-100 provides that a defendant may be convicted of embezzlement upon an indictment charging him with false pretenses, and defendant's guilty plea in this case is treated as a guilty plea to the crime of embezzlement; and (3) evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and to be guilty of embezzlement defendant must have initially received the property in question lawfully pursuant to a trust relationship.

STATE v. MURPHY

[152 N.C. App. 335 (2002)]

**3. Sentencing— aggravating factor—took advantage of position or trust or confidence—guilty plea to false pretenses**

The trial court was not precluded in obtaining property by false pretenses cases (98CRS 72458-72461) arising out of defendant's loan brokering scheme from finding the trust or confidence aggravating factor under N.C.G.S. § 15A-1340.16(d)(15) even though defendant contends his guilty plea on false pretenses charges operated as an acquittal on the charge of embezzlement arising from the same transactions, which allegedly collaterally estopped the State from relitigating the issue of whether a relationship of trust or confidence existed between defendant and the victims, because: (1) the critical distinction between embezzlement and false pretenses is not the presence or absence of a position of trust or confidence, but whether the property at question was initially obtained lawfully or unlawfully; and (2) a defendant may take advantage of a position of trust or confidence in order to obtain property unlawfully pursuant to a false representation.

**4. Sentencing— mitigating factor—person of good character or good reputation in community—false pretenses**

The trial court did not err in obtaining property by false pretenses cases by failing to find as a mitigating factor under N.C.G.S. § 15A-1340.16(e)(12) that defendant has been a person of good character or has had a good reputation in the community in which he lives, because although defendant presented letters from twenty-four individuals attesting to the quality of defendant's character, this evidence does not rise to the level of being manifestly credible when: (1) six of the letters were written by prisoners whose only contact with defendant occurred while defendant was incarcerated; and (2) the vast majority of the remaining letters were written by family members, fellow church members, neighbors, or close friends, and the relationship of the individuals who wrote the letters to defendant is a factor which the factfinder may consider in assessing the credibility of those individuals.

Appeal by defendant from judgments entered 15 February 2000 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 27 March 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas M. Woodward, for the State.*

*Ligon and Hinton, by Lemuel W. Hinton, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted on six counts of obtaining property by false pretenses (hereinafter, "false pretenses") in violation of N.C. Gen. Stat. § 14-100. In five of the counts (98 CRS 72457-72461), the State alleged that defendant obtained money with the intent to defraud by falsely representing that he had brokered business loans for the victims and that they needed to make a good faith down payment in order to finalize the loan transactions. When the loans did not materialize and the victims confronted defendant, he failed to return their down payments. In the sixth count (99 CRS 30353), the State alleged that defendant withdrew money from the bank account of the Tarheel Swim Association ("the Swim Association") and converted it to his own use without the consent and authority of the Swim Association.

Defendant pled guilty to all six counts of false pretenses and a sentencing hearing was held in Wake County Superior Court before Judge Bullock. Defendant stipulated to being sentenced at prior record level II. Following a summary of the charges by the State, the presentation of evidence and the arguments of counsel, the trial court found the following aggravating factors: In 98 CRS 72457, the trial court found as an aggravating factor that the offense involved the actual taking of property of great monetary value. In 98 CRS 72458, the transcript of the sentencing hearing indicates that the trial court found as an aggravating factor that defendant took advantage of a position of trust or confidence to commit the offense.[1] In the four remaining cases, 98 CRS 72459, 98 CRS 72460, 98 CRS 72461 and 99 CRS 30353, the transcript indicates that the trial court found two aggravating factors: (1) that the offense involved the actual taking of

---

1. However, the "Felony Judgment Findings of Aggravating and Mitigating Factors" form indicates that the only aggravating factor found by the trial court in 98 CRS 72458 was that the offense involved the actual taking of property of great monetary value. The fact that box number 14b on the form was checked instead of box number 15 is an obvious clerical error because it is inconsistent with the trial court's actual findings, which we view as controlling in the trial court's sentencing of defendant in the instant case. *See State v. Gell*, 351 N.C. 192, 218, 524 S.E.2d 332, 349 (2000).

property of great monetary value, and (2) that defendant took advantage of a position of trust or confidence to commit the offense.[2]

In all six cases, the trial court found as the sole mitigating factor that defendant had accepted responsibility for his criminal conduct. The trial court then found that the aggravating factors outweighed the mitigating factors in all six cases.[3] Accordingly, the trial court sentenced defendant in the aggravated range on all six charges and ordered defendant incarcerated for consecutive prison terms of 10 to 12 months. Defendant appeals his sentences pursuant to N.C. Gen. Stat. § 15A-1444(a1). Defendant contends (1) that the trial court erred in finding as an aggravating factor that defendant took advantage of a position of trust or confidence to commit the offenses, and (2) that the trial court erred in failing to find as a mitigating factor that defendant has been a person of good character or has had a good reputation in the community in which he lives.

[1] Defendant first argues that the record lacked sufficient evidence to support the trial court's finding as an aggravating factor that he took advantage of a position of trust or confidence. N.C. Gen. Stat. § 15A-1340.16(d)(15) (2001).[4]

The State bears the burden of proving the existence of an aggravating factor by a preponderance of the evidence. N.C.G.S. § 15A-1340.16(a); *State v. Noffsinger*, 137 N.C. App. 418, 528 S.E.2d 605 (2000). In *State v. Daniel*, 319 N.C. 308, 354 S.E.2d 216 (1987), our Supreme Court held that a finding of the "trust or confidence" aggravating factor depends "upon the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other." *Id.* at 311, 354 S.E.2d at 218; *accord State v. Mann*, 355 N.C. 294, 319, 560 S.E.2d 776, 791 (2002). As the Supreme Court recently observed in *Mann*, our courts have upheld a finding of the "trust or confidence" factor in very limited factual circumstances. *See, e.g., State v. Farlow*, 336 N.C. 534, 444 S.E.2d 913 (1994) (factor

---

2. The "Felony Judgment Findings of Aggravating and Mitigating Factors" forms for these four cases do not make it clear that the trial court found that the offenses involved the actual taking of property of great monetary value. The fact that box number 14b was not checked on the forms is an obvious clerical error. *See Gell*, 351 N.C. at 218, 524 S.E.2d at 349.

3. The trial court failed to check the appropriate box on the "Felony Judgment Findings of Aggravating and Mitigating Factors" forms to indicate this finding. Again, we view this as a clerical error. *See Gell*, 351 N.C. at 218, 524 S.E.2d at 349.

4. This argument does not apply to 98 CRS 72457 because the trial court did not find the "trust or confidence" aggravating factor in that case.

properly found where nine-year-old victim of sexual offense spent great deal of time in adult defendant's home and essentially lived with defendant while mother, a long-distance truck driver, was away); *State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991) (factor properly found where defendant conspired to kill her husband, who came to believe that defendant had a change of heart and ended her extra-marital affair with another); *Daniel*, 319 N.C. at 311, 354 S.E.2d at 218 (factor properly found where defendant murdered her newborn child); *State v. Stanley*, 74 N.C. App. 178, 327 S.E.2d 902 (1985) (factor properly found where defendant raped nineteen-year-old mentally retarded female who lived with defendant's family and who testified that she trusted and obeyed defendant as an authority figure); *State v. Baucom*, 66 N.C. App. 298, 311 S.E.2d 73 (1984) (factor properly found where adult defendant sexually assaulted his ten-year-old brother); *State v. Potts*, 65 N.C. App. 101, 308 S.E.2d 754 (1983) (factor properly found where defendant shot best friend who thought of defendant as a brother). *But see Mann*, 355 N.C. at 320, 560 S.E.2d at 792 (factor not properly found where victim occasionally drove defendant co-worker to work and met with defendant to discuss unemployment benefits after defendant's lay-off; the evidence at most showed a cordial working relationship, perhaps even a friendship); *State v. Erlewine*, 328 N.C. 626, 403 S.E.2d 280 (1991) (factor not properly found where defendant shared an especially close relationship with his drug dealer, the murder victim); *State v. Midyette*, 87 N.C. App. 199, 360 S.E.2d 507 (1987) (factor not properly found where defendant and victim had been acquainted for approximately one month before the murder and where victim had once asked defendant to join her and her sister for breakfast at victim's apartment); *State v. Carroll*, 85 N.C. App. 696, 355 S.E.2d 844 (1987) (factor not properly found where defendant and victim had met only one and a half days before the murder and had decided to take a trip together in defendant's car).

These cases reveal that our appellate courts have most often considered and upheld the "trust or confidence" factor in the context of crimes against the person committed by a defendant who shared a friendship or familial relationship with the victim. However, this Court has held that the "trust or confidence" aggravating factor is not limited to friendships and familial relationships. *State v. Carter*, 122 N.C. App. 332, 470 S.E.2d 74 (1996); *see also State v. Hammond*, 118 N.C. App. 257, 454 S.E.2d 709 (1995) (stating in *dicta* the Court's belief that the "trust or confidence" factor is not limited to friendships and familial relationships). In addition, this Court has consid-

ered and upheld the "trust and confidence" factor outside the context of a crime against the person. *See Carter*, 122 N.C. App. at 339, 470 S.E.2d at 79 (1996).

In *Carter*, the defendant was a university student who had been entrusted by one of his professors with the security access code to a computer lab with the expectation that the student would behave in a responsible and trustworthy fashion. The security access code gave the defendant access to computer equipment worth thousands of dollars. The defendant was charged and convicted of felony larceny of numerous pieces of computer equipment belonging to the university. The defendant argued that the "trust or confidence" aggravating factor did not apply because the victim was not an individual and the relationship between the defendant and the university was not one of trust or confidence which caused the university to rely on the defendant. This Court noted the preexisting relationship between the defendant and the university and concluded that the defendant had taken advantage of the trust and confidence placed in him by his professor on behalf of the university. *Id.* at 339, 470 S.E.2d at 79.

At the outset of the sentencing hearing in the case *sub judice*, the State presented a summary of the factual basis for the charges against defendant.[5] The State's summary tended to show the following: In the Summer of 1998, defendant represented himself as being affiliated with LCE Leasing Company, a company specializing in brokering large commercial loans. Potential clients seeking to obtain financing to start or expand businesses were referred to defendant by Nationwide Mortgage Company, a separate business entity. These potential clients were told that defendant would be able to secure the large loans they were seeking. Defendant told the clients that in order to prove their good faith and ability to repay the loans they would need to pay defendant a first and last month installment payment on the loans. The State contended that "either the companies that this defendant told [the clients] would [finance] the loans . . . did not exist or they were front companies for other businesses." When the funds from the loans were not forthcoming, the clients began to question defendant. Defendant told the clients that the loans were being processed or that he was having problems with third parties involved

---

5. When a defendant pleads guilty, the trial court may rely upon the circumstances surrounding the offense, including factual allegations in the indictment, in determining whether aggravating factors exist. *See State v. Thompson*, 314 N.C. 618, 336 S.E.2d 78 (1985); *State v. Sammartino*, 120 N.C. App. 597, 463 S.E.2d 307 (1995); *State v. Flowe*, 107 N.C. App. 468, 420 S.E.2d 475 (1992).

in the transactions. The clients eventually became frustrated and reported the matter to law enforcement.

This loan brokering scheme gave rise to five of the six charges against defendant in the instant case (98 CRS 72457-72461). The victims and the amount of money defendant obtained from each, as set forth in the respective indictments, is as follows: Richard Bennot ($36,680.00), Alice Huang ($11,680.00), Emily Easter-Grant ($9,850.00), Kang Seok Lee ($60,900.00), and Henry Grassi ($13,340.00).

The State summarized the evidence against defendant in the sixth case (99 CRS 30353) as follows: In his position with the Swim Association, defendant had access to the Swim Association's financial books and bank account. When word got out that defendant had been indicted in connection with his loan brokering scheme, members of the Swim Association asked for him to return the Swim Association's books, but defendant was unwilling to turn them over. When the Swim Association finally recovered its books, it discovered that defendant had withdrawn $22,220.50 from its bank account for his own use. Following the State's summary of the factual basis supporting the charges, defendant declined an opportunity to add or object to the State's summary. Accordingly, the State's summary was properly considered by the trial court in making its sentencing determination.

Richard Bennot ("Bennot"), one of the victims of defendant's loan brokering scheme, also testified at the sentencing hearing. Bennot testified that he contacted Nationwide Mortgage Company for assistance in securing a loan for a health and fitness center. Nationwide referred Bennot to defendant, and the two parties eventually came to an agreement on a loan. Defendant requested a first payment from Bennot in the amount of $36,680.00. Bennot wrote a cashier's check in that amount to LCE Leasing Company and turned it over to a representative of the company at an arranged meeting at the offices of Nationwide Mortgage Company. Bennot never received the proceeds from the agreed upon loan nor was his initial payment of $36,680.00 ever returned to him.

Kang Seok Lee ("Lee"), another one of defendant's victims, also testified at the sentencing hearing. Lee's testimony corroborated the testimony of Bennot and the summary of the evidence provided by the State. Specifically, Lee testified that he gave defendant $60,990.00

as a down payment on a loan for a martial arts academy. Lee never received the loan or his down payment back.

We conclude that the evidence of defendant's loan brokering scheme demonstrates "the existence of a relationship between the defendant and [the victims in 98 CRS 72458-72461] generally conducive to reliance of one upon the other." *Daniel*, 319 N.C. at 311, 354 S.E.2d at 218. Defendant held himself out as a legitimate businessman with the ability to obtain financing for loans for the victims. Defendant represented to the victims that in order to secure the loans from third parties he would need an initial down payment as a good faith gesture that the victims were serious about obtaining the loans and had the ability to repay them. Relying on defendant's representations, the victims then turned over large amounts of money, in one instance more than $60,000.00, to defendant with the expectation that defendant would use the money to secure the loans and that they would in fact receive the funds from the promised loans. In so doing, the victims placed great trust and confidence in defendant that he would follow through on his representations and not defraud them of their money. Instead, the victims did not receive the promised loans and defendant failed to return their down payments. As a result, defendant violated the trust and confidence placed in him by the victims. Accordingly, we conclude that there was sufficient evidence to support the trial court's finding of the "trust or confidence" aggravating factor in the five cases arising out of defendant's loan brokering scheme (98 CRS 72458-72461).

[2] In the case involving the Swim Association (99 CRS 30353), we likewise conclude that the evidence was sufficient to support a finding that defendant took advantage of a position of trust or confidence. The State's summary of the factual basis for the charge in 99 CRS 30353, which defendant failed to object to, showed that defendant maintained a position with the Swim Association that provided him with access to the financial books and bank accounts belonging to the Swim Association and allowed him to write checks on the bank accounts. This position placed defendant in a fiduciary capacity in his relationship with the Swim Association. Defendant was not given consent and authority to use the Swim Association's money for anything other than Swim Association business. In complete disregard of this position of trust, defendant withdrew money from the Swim Association's account and converted it to his own use. There can be no doubt that the relationship between defendant and the Swim Association was one in which the Swim Association placed a high

level of trust and reliance in defendant. Accordingly, there was ample evidence that defendant took advantage of a position of trust or confidence in 99 CRS 30353.

Nonetheless, we conclude that the trial court erred in finding the "trust or confidence" aggravating factor in 99 CRS 30353 because the summary of the evidence of the relationship between defendant and the Swim Association presents a classic case of embezzlement. Embezzlement is the wrongful conversion of property which was initially acquired lawfully, pursuant to a trust relationship. *State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 166 (1990) (citing *State v. Griffin*, 239 N.C. 41, 45, 79 S.E.2d 230, 233 (1953)). On the other hand, false pretenses is the unlawful acquisition of property, pursuant to a false representation. *Id.* The crimes of embezzlement and false pretenses are mutually exclusive offenses; a defendant cannot be convicted of both embezzlement and false pretenses based upon a single transaction. *Id.* However, N.C.G.S. § 14-100 "clearly provides that a defendant may be convicted of embezzlement upon an indictment charging him with false pretenses." *Id.* at 579, 391 S.E.2d at 167. Accordingly, defendant could have properly been convicted of embezzlement based on the indictment in the Swim Association case if the evidence submitted to the jury tended to show that the transaction amounted to embezzlement. *See id.* The evidence presented at the sentencing hearing concerning the relationship between defendant and the Swim Association clearly shows that defendant gained access to the Swim Association's bank account lawfully, pursuant to a trust relationship. Consequently, we treat defendant's guilty plea in the Swim Association case as a guilty plea to the crime of embezzlement.

N.C. Gen. Stat. § 15A-1340.16(d) (2001) provides: "Evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation . . . ." As earlier noted, to be guilty of embezzlement, a defendant must have initially received the property in question lawfully, pursuant to a trust relationship. *Speckman*, 326 N.C. at 578, 391 S.E.2d at 166. Thus, "proof of embezzlement necessarily involves proof of a position of trust and the trial court erred in finding as an aggravating factor that defendant violated a position of trust." *State v. Mullaney*, 129 N.C. App. 506, 511, 500 S.E.2d 112, 115-16 (1998). Accordingly, we remand 99 CRS 30353 for resentencing on defendant's plea of guilty to the crime of embezzlement. Upon remand, the trial court is precluded from finding the "trust or confidence" aggravating factor.

**[3]** Defendant next argues that the trial court was precluded from finding the "trust or confidence" aggravating factor because defendant's guilty plea on the false pretenses charges necessarily operated as an acquittal on the charge of embezzlement arising from the same transactions, and, since an essential element of embezzlement is that the property in question initially be acquired lawfully pursuant to a trust relationship, the State was collaterally estopped from relitigating the issue of whether a relationship of trust or confidence existed between defendant and the victims. We disagree.[6]

While we recognize the mutually exclusive nature of the crimes of embezzlement and false pretenses, and the fact that a defendant may not be convicted of both arising from the same act or transaction, defendant misinterprets the critical distinction between the two crimes. The critical distinction between embezzlement and false pretenses is not the presence or absence of a position of trust or confidence, but rather whether the property at question was initially obtained lawfully or unlawfully, *i.e.*, with the intent to defraud. *See Speckman*, 326 N.C. at 578, 391 S.E.2d at 166-67 ("This Court has previously held that, since property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other."). Thus, a guilty plea to false pretenses, which necessarily excludes guilt of embezzlement, is not a final determination with preclusive effect on the issue of whether defendant took advantage of a position of trust or confidence in obtaining the property. A defendant may take advantage of a position of trust or confidence in order to obtain property unlawfully, pursuant to a false representation. Therefore, a guilty plea to false pretenses does not preclude a finding of the "trust or confidence" aggravating factor.

**[4]** In his final argument, defendant contends that the trial court erred in failing to find as a mitigating factor that he was a person of good character or had a good reputation in the community in which he lives. N.C. Gen. Stat. § 15A-1340.16(e)(12) (2001). In support of this mitigating factor, defendant presented letters from twenty-four individuals attesting to the quality of his character. The individuals who wrote the letters included family members, close friends, fellow church members, members of the community with whom defendant

---

6. Having held that defendant's plea of guilty in the Swim Association case amounted to a plea of guilty to embezzlement, we only consider this argument as it relates to the cases arising out of defendant's loan brokering scheme, which we view as true false pretenses cases.

had worked, and prisoners with whom defendant had been incarcerated. These letters paint a picture of a devoted family man with three children who was active in his church and his community. Specifically, they show that defendant was active in the PTA, volunteered his time to coach youth athletic teams, once served as president of the high school athletic club, served on the board of the homeowners' association, ran for a seat on the town council, sponsored refugees from Africa, and was an active member of Bible study while serving time in prison. Defendant argues that this evidence of his character and reputation was uncontradicted, substantial, manifestly credible and clearly established his good character and reputation in the community. Thus, defendant maintains that the trial court erred in not finding the "good character or reputation" mitigating factor.

When a defendant produces evidence of his character in order to take advantage of the "good character or reputation" mitigating factor, character becomes a direct issue in the case and may be proved by specific acts as well as by the opinions of others as to the defendant's reputation. *State v. Benbow*, 309 N.C. 538, 547, 308 S.E.2d 647, 652-53 (1983). When such evidence of good character and reputation is "uncontradicted, substantial and manifestly credible, the sentencing judge may not simply ignore it." *State v. Freeman*, 313 N.C. 539, 551, 330 S.E.2d 465, 474-75 (1985) (citing *State v. Jones*, 309 N.C. 214, 218-19, 306 S.E.2d 451, 454 (1983)); *see also State v. Ruff*, 127 N.C. App. 575, 581, 492 S.E.2d 374, 377 (1997). When a defendant argues that his evidence is sufficient to compel the finding of a mitigating factor, he bears the same burden of persuasion of a party seeking a directed verdict; he must demonstrate that the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn and that the credibility of the evidence is manifest as a matter of law. *Freeman*, 313 N.C. at 551, 330 S.E.2d at 475.

Having reviewed each of the twenty-four letters presented by defendant, we cannot say that the trial judge erred when he concluded that this evidence was insufficient to establish as a matter of law that defendant was a person of good character or had a good reputation in his community. Although the letters provide uncontradicted evidence of defendant's good character, this evidence does not rise to the level of being manifestly credible. Six of the letters were written by prisoners whose only contact with defendant occurred while defendant was incarcerated. Therefore, these individuals had no knowledge of defendant's general character and reputation in the community in which he lived prior to being arrested. We also question

the general credibility of these prisoners as character references. In addition, the vast majority of the remaining letters were written by family members, fellow church members, neighbors, or close friends of defendant. Although not necessarily detracting from their credibility, the relationship of the individuals who wrote the letters to defendant is a factor which the factfinder may consider in assessing the credibility of those individuals. Thus, we conclude that it was within the prerogative of the trial court to accept or reject the opinions set forth in the letters. *See State v. Taylor*, 309 N.C. 570, 578, 308 S.E.2d 302, 308 (1983); *Benbow*, 309 N.C. at 548, 308 S.E.2d at 653.

We do not suggest that the letters presented by defendant would not have supported a finding by the trial court that defendant was a person of good character and good reputation in the community in which he lived. We simply have pointed to factors that may call into question the credibility of the vast majority of individuals who wrote letters on behalf of defendant's character and reputation. As a result, we conclude that the letters presented by defendant are not of such quality and definiteness as to be overwhelmingly persuasive on the question of defendant's good character or good reputation. Thus, the trial court was not compelled to find the "good character or reputation" mitigating factor. Defendant's final argument is overruled.

In conclusion, we hold that the trial court erred in finding as an aggravating factor in 99 CRS 30353 that defendant took advantage of a position of trust or confidence. As to the other cases, we hold that the trial court did not err in finding the "trust or confidence" aggravating factor. Finally, as to all cases, we hold that the trial court did not err in failing to find the "good character or reputation" mitigating factor. This matter is remanded for resentencing in 99 CRS 30353 consistent with this opinion and affirmed in all other respects.

Affirmed in part and remanded in part.

Judges WALKER and McGEE concur.