STATE OF NORTH CAROLINA v. CLARENCE A. OWENS, MASIE McCLAIN
AND LORETTA LYNN TYLER

No. 8412SC985

(Filed 2 July 1985)

1. **Criminal Law § 74.2— statements by non-testifying codefendant—admission as prejudicial error**

    A non-testifying codefendant's out-of-court statement that he had picked up defendant and his companion because they had pointed guns at him was incriminating to defendant, and its admission thus violated defendant's right of confrontation as set forth in *Bruton v. United States*, 391 U.S. 123 (1968), where the statement placed defendant and his companion on foot near the scene of a robbery in possession of guns later identified as similar to those used in the robbery and so eager to flee the area that they forced their way into the codefendant's truck at gunpoint. Furthermore, the violation of the *Bruton* rule constituted prejudicial error where there was no eyewitness identification of defendant, and the jury might not have convicted defendant without evidence putting the robbery weapons in the hands of defendant and his companion.

2. **Robbery § 5— armed robbery—instructions on possession of recently stolen goods—sufficient evidence**

    The evidence in a robbery prosecution was sufficient to show that defendant was in possession of stolen goods so as to support the trial court's instruction on the doctrine of possession of recently stolen goods where it tended to show that defendant was a passenger in a truck carrying property taken during an armed robbery, that defendant and two others in the truck were acting in concert, and that a codefendant never saw any weapons or a duffel bag containing stolen goods until defendant entered the truck.

3. **Robbery § 4.6— armed robbery—acting in concert—sufficient evidence**

    The State's evidence was sufficient to support defendant's conviction of armed robbery on the theory of acting in concert where it tended to show that a convenience store was robbed at 2:00 a.m. by two armed men; moments thereafter two men were picked up in a truck by defendant and his companion on a dead-end road immediately behind the store; and when the foursome was apprehended a short time later, defendant was driving the truck and stolen items and weapons similar to the ones used in the robbery were discovered in the cab of the truck.

4. **Larceny § 8.4; Robbery § 5— recent possession doctrine—identification of stolen goods**

    Items stolen during an armed robbery were sufficiently identified to permit an instruction on the doctrine of possession of recently stolen property where a store clerk's description of what was taken matched the items identified by a crime scene technician as having been found in a truck occupied by defendants.

**5. Criminal Law § 90.1— State not bound by exculpatory statement**

The State was not bound by defendant's exculpatory statement which it introduced where such statement was contradicted by a codefendant's testimony.

**6. Criminal Law § 138.7— sentencing—improper remark not considered**

The record showed that the sentencing judge did not consider the prosecutor's improper reference to a robbery that had occurred the night before the robbery in question where the judge asked whether defendant had ever been tried for the other robbery, and the prosecutor responded that there "really was no evidence" connecting defendant with the other crime.

APPEAL by defendants Owens and McClain from *Bailey, Judge.* Judgment entered 31 May 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 2 April 1985.

*Attorney General Rufus Edmisten, by Special Deputy Attorney General Ann Reed, for the State.*

*Appellate Defender Adam Stein, by First Assistant Appellate Defender Malcolm Ray Hunter, Jr., for defendant appellant Owens.*

*Assistant Public Defender Staples Hughes, for defendant appellant McClain.*

BECTON, Judge.

I

Defendants, Owens, McClain, and Tyler, were charged with armed robbery and conspiracy to commit armed robbery. McClain and Tyler were also charged with accessory after the fact of armed robbery. At the close of all the evidence, the trial court dismissed the conspiracy charges. The jury returned verdicts of guilty of armed robbery against Owens and McClain, and a verdict of guilty of accessory after the fact against Tyler.

A fourth defendant, Anthony Lee Kelly, was tried separately on a two-count indictment charging robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon, which charges arose out of the same facts as the convictions on appeal. Kelly was acquitted of robbery and convicted of conspiracy. Kelly's conviction was set aside on the ground that the conspiracy charges against the three persons with whom Kelly was charged to have conspired had all been dismissed.

Defendants Owens and McClain appeal. Owens contends that it was reversible error to allow the State to present evidence of an out-of-court statement by a non-testifying codefendant, and also that it was plain error for the court to instruct the jury on the theory of recent possession. McClain contends that his motion to dismiss was erroneously denied, and also contends that certain statements by the prosecutor impermissibly tainted his sentencing hearing. For the reasons stated below, as to defendant McClain we find no error, and as to defendant Owens, because the State's introduction of the out-of-court statement violated Owens' right to confront witnesses against him, we find error, and award a new trial.

II

Factual Background

Owens, McClain, Tyler and Kelly were charged with the robbery of a Kroger Sav-On store. Linda Fritsch, the cashier, testified that in the early morning hours of 28 November 1983, two armed, masked men entered the store. While one man held her fellow employees at gunpoint, the other had her empty the contents of her cash register into a green duffel bag. Fritsch testified as to the contents of the register. She also testified that both men wore camouflage fatigues and gloves, that one had a brown stocking over his face, and the other a full ski mask.

Two sheriff's deputies on patrol were called to the Krogers. After interviewing the employees, the deputies drove toward a section of woods behind the store to look for the two men. The deputies stopped a red pick-up truck that held Owens, Kelly, Tyler, and the driver, McClain. When one of the deputies spotted a weapon on the floorboard of the cab, all four were arrested.

One of the deputies briefly searched the truck. Two rifles were found partially under the front seat. A ski mask was found near the guns on the floorboard. A green duffel bag and brown coat were found in the back of the truck. Tyler had two rolls of quarters in her purse. A later search by a crime scene technician revealed cash, checks, food stamps and food coupons in the green bag, a pair of brown gloves near the passenger door, a single glove on the floorboard and a pair of pantyhose on the floorboard.

The Kroger cashier testified that the ski mask and the pair of gloves looked similar to those worn by the robbers.

III

Defendant Owens' Appeal

A.

[1]    Neither Owens nor McClain testified at trial. Tyler, however, took the stand in her own behalf and testified that she and Mc-Clain were driving down the road when they encountered Owens and Kelly. She testified that in return for a promise of payment for gasoline, McClain offered the pair a ride. Tyler stated that she never saw Owens or Kelly with any of the incriminating items and was not aware that the guns, ski mask and green bag were in the truck until the police discovered them after the arrest. The prosecution, in an apparent attempt to discredit Tyler's testimony, called a sheriff's detective as a rebuttal witness. The detective testified that he had interviewed McClain shortly after the crime, and McClain told him that he had picked up the two men because they had "pointed guns at him and the girl." Owens' contention is that the admission of the out-of-court statement of Mc-Clain, a non-testifying codefendant, which statement incriminated him, constituted reversible error because it denied Owens his right to confront witnesses against him.

The controlling rule of law appears in the landmark case of *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968), in which the United States Supreme Court "held that in a joint trial the admission of a non-testifying codefendant's extrajudicial confession, which implicates [a codefendant], is a violation of the [latter's] 'right of cross-examination secured by the Confrontation Clause of the Sixth Amendment'." *State v. Gonzalez*, 311 N.C. 80, 92, 316 S.E. 2d 229, 236 (1984) (quoting *Bruton*, 391 U.S. at 126, 20 L.Ed. 2d at 479, 88 S.Ct. at 1622). *See State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968) (*Bruton* binding on N.C. Courts). The State contends that the *Bruton* rule is inapplicable here because the extrajudicial statement was not a confession, and that it did not incriminate Owens. Neither contention has merit.

*Bruton* and its North Carolina progeny have not limited the application of the rule to confessions only. The more general term

"statement" is used interchangeably with "confessions," *see Bruton; Gonzalez,* and the rule has been expressly applied to statements that are not confessions. *Gonzalez; State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977) (*Bruton* rule applies "equally to admissions" by a codefendant).

The State also suggests that McClain's out-of-court statement did not incriminate Owens and is thus beyond the pale of *Bruton.* We disagree. "The *sine qua non* for application of *Bruton* is that the party claiming incrimination without confrontation at least be implicated," *State v. Jones,* 280 N.C. 322, 340, 185 S.E. 2d 858, 869 (1972), and the challenged statement here easily meets that test.

The statement was incriminating to Owens because it placed Owens and Kelly on foot near the scene of the robbery, in possession of the guns which were later identified as similar to those used in the robbery, and so anxious to flee the area that they forced their way into the truck at gunpoint. It is not significant that proper names were not used because Owens and Kelly were the only other "two men" in the truck when the police arrived. *See Gonzalez* (codefendant's statement that "some guys" committed the robbery incriminated defendant when context made it clear that defendant was one of the "guys").

Finally, we conclude that the violation of the *Bruton* rule was not harmless error. There was no eyewitness identification of Owens. Without the evidence putting the robbery weapons in the hands of Owens and Kelly, the jury might not have been able to find beyond a reasonable doubt that Owens was one of the robbers. *Compare Jones* (*Bruton* error harmless when extrajudicial statement merely provided cumulative evidence and evidence of accused's guilt was overwhelming). Although we award Owens a new trial on the basis of the *Bruton* violation, we discuss his other assignment of error as it pertains to an issue that will undoubtedly recur on retrial.

B.

[2] Owens' second contention is that the trial court committed plain error in instructing the jury on the doctrine of possession of recently stolen goods. The doctrine has been applied to the charge of armed robbery in the appropriate case. *State v. Hickson,* 25 N.C. App. 619, 214 S.E. 2d 259, *cert. denied,* 288 N.C. 246,

217 S.E. 2d 670 (1975). In order to invoke the doctrine, and raise a presumption of guilt, the State must show beyond a reasonable doubt, that:

> (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to [defendant's] control and disposition to the exclusion of others though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods; . . . and (3) the possession was recently after the larceny. . . .

*State v. Maines*, 301 N.C. 669, 674, 273 S.E. 2d 289, 293 (1981) (citations omitted). Owens argues that the evidence does not support the second element: possession. Specifically, he contends that evidence that he was a passenger in a truck that carried stolen property is not sufficient to permit the jury to consider whether the doctrine applied in this case. We disagree.

In *State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972), the Supreme Court stated:

> The possession sufficient to give rise to such inference does not require that the defendant have the article in his hand, on his person or under his touch. It is sufficient that he be in such physical proximity to it that he has the power to control it to the exclusion of others and that he has the intent to control it.

*Id.* at 254, 192 S.E. 2d at 445. "The 'exclusive' possession required to support an inference or presumption of guilt need not be a sole possession but may be joint." *State v. Maines*, 301 N.C. at 675, 273 S.E. 2d at 294.

> For the inference to arise when more than one person has access to the property in question, the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property or other evidence which sufficiently connects the accused person to the crime or a joint possession of co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all. Stated differently, for the inference to arise, the possession in defendant must be to the exclusion of all persons not party to the crime.

*State v. Maines*, 301 N.C. at 675, 273 S.E. 2d at 294. *See State v. Hopson*, 266 N.C. 643, 146 S.E. 2d 642 (1966) (when defendant was neither driver nor owner of the vehicle in which stolen articles were found, nothing else appearing, evidence does not show defendant in possession of the articles).

In this case, we conclude that sufficient evidence was adduced to show that Owens was in possession of the stolen goods, and thus that it was proper to instruct the jury on the doctrine of recently stolen property. The evidence showed that Owens, Tyler and McClain were acting in concert; further, Tyler testified that she never saw any weapons, the duffel bag, or its contents until the group was arrested — until after Owens and Kelly had gotten into the truck. Since we find the instructions free from error on this point, it is unnecessary to address the issue of plain error.

IV

Defendant McClain's Appeal

A.

McClain argues that the trial court erred in denying his motion to dismiss the charge of armed robbery at the close of all the evidence. He makes three specific contentions with regard to this argument, and after briefly reviewing the applicable law, we address these contentions serially.

> An armed robbery is defined as the taking of personal property of another in his presence or from his person without his consent by endangering or threatening his life with a firearm, with the taker knowing that he is not entitled to the property and the taker intending to permanently deprive the owner of the property.

*State v. Davis*, 301 N.C. 394, 397, 271 S.E. 2d 263, 264 (1980). The familiar rules governing a motion to dismiss made in a criminal case need no lengthy recitation here. "The question for the court is whether, when the evidence is so considered, there is reasonable basis upon which the jury might find that an offense charged in the indictment has been committed and the defendant was a principal in the commission of the crime." *State v. Dowd*, 28 N.C. App. 32, 37, 220 S.E. 2d 393, 396 (1975).

[3]  McClain first contends that his motion to dismiss should have been granted because the evidence did not warrant submitting the issue of aiding and abetting to the jury. We disagree. A person who is actually or constructively present when a crime is committed and who aids or abets another in its commission is a principal in the second degree, and is equally guilty as a principal in the first degree, the person who actually commits the crime. *State v. Davis.* The trial court appears to have instructed the jury on a theory of acting in concert, rather than aiding and abetting. As a practical matter, however, the difference between acting in concert and aiding and abetting is of little significance, both being "equally guilty" and "equally punishable." *State v. Williams*, 299 N.C. 652, 656, 263 S.E. 2d 774, 777 (1980). *See State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979) (acting in concert means acting in conjunction with another pursuant to a common plan or purpose).

Applying these principles to the instant case, we find that the evidence shows that a Kroger store was robbed at 2:00 a.m. by two armed men who fled the store. Moments thereafter, Owens and Kelly were picked up by McClain and Tyler on a dead-end road immediately behind the store. When the foursome was apprehended, the stolen items and weapons similar to the ones used in the robbery were discovered in the cab of the truck. In our opinion, this evidence would support theories on either aiding and abetting or acting in concert as to McClain, and there was no error in charging the jury on the latter theory.

McClain next argues that the motion to dismiss should have been allowed because there was insufficient evidence for the court to instruct the jury on the doctrine of possession of recently stolen property. McClain bases this argument on two separate contentions, the first being insufficient evidence that McClain possessed the stolen goods. Our discussion of Owens' possession earlier in this opinion appertains here, and we conclude that the evidence shows McClain was in possession of the goods.

[4]  Second, McClain argues that the goods were not adequately identified. In the case at hand, Linda Fritsch testified that cash, loose change, rolled change, two checks countersigned by her, some food stamps, and two merchandise coupons, one for hot dogs and one for diapers, were taken from her cash register. She

estimated the total value of the currency, including the checks, at $85 to $95. The crime scene technician testified as to the contents of the green cloth bag removed from the truck, namely, $146 in currency, $17.50 in rolled change, $8.22 in loose change, $29.00 in food stamps, personal checks totalling $11.90, dated 28 November 1983, and countersigned "L. Fritsch," and two store coupons, one a hotdog coupon and one a diaper coupon.

It is true that "[t]he identity of the fruits of the crime must be established before the presumption of guilt from possession of recently stolen goods can apply." *State v. Jones*, 227 N.C. 47, 49, 40 S.E. 2d 458, 460 (1946). When, as here, items "devoid of identifying features," such as money, "are the proceeds of a larceny, their identity . . . must necessarily be drawn from other facts satisfactorily proved." *State v. Crawford*, 27 N.C. App. 414, 415, 219 S.E. 2d 248, 249, *disc. rev. denied*, 288 N.C. 732, 220 S.E. 2d 621 (1975). In our opinion, the evidence at bar was sufficient to identify the stolen property. Fritsch's description of what was taken matched the items identified by the crime scene technician. *See State v. Hales*, 32 N.C. App. 729, 233 S.E. 2d 601, *disc. rev. denied*, 292 N.C. 732, 235 S.E. 2d 782 (1977) (identification sufficient; "a great many variables coincided perfectly"); *State v. Jackson*, 274 N.C. 594, 164 S.E. 2d 369 (1968) (same result; amount of money, number and denomination of bills tallied).

[5] Finally, McClain argues that his motion to dismiss should have been granted because the State was bound by the uncontradicted, exculpatory statement of defendant McClain, which the State introduced, that two men pointed guns at him and at co-defendant Tyler. An exculpatory statement introduced by the State justifies dismissal only when it is both exculpatory and uncontradicted. *State v. Carter*, 254 N.C. 475, 119 S.E. 2d 461 (1961). Assuming, *arguendo*, that the statement was exculpatory, McClain's statement was clearly contradicted by Tyler's testimony that Owens and Tyler were hitchhiking when they were picked up by McClain in exchange for gas money. Thus, the State was not bound by the statement.

B.

[6] McClain makes a final argument based on a perceived impropriety at his sentencing hearing. The record shows that the prosecutor made a reference to a robbery that had occurred the

night before the robbery of Krogers, arguably implying that McClain had been involved in that other incident. McClain contends that the record contains no assurance that the sentencing judge did not consider this information in sentencing, but we conclude otherwise. The judge himself asked whether McClain had ever been tried for the other robbery, to which the prosecutor responded that there was "really no evidence" connecting McClain with the other crime. The record therefore discloses not that the sentencing judge considered the improper material, but that he specifically declined to consider it.

As to defendant Owens, there must be a

New trial.

As to defendant McClain, we find

No error.

Judges WEBB and PARKER concur.