STATE OF NORTH CAROLINA, APPELLEE v. JIMMY STEVENSON MITCHELL, APPELLANT

No. 9117SC1017

(Filed 2 March 1993)

**Burglary and Unlawful Breakings § 119 (NCI4th)— felonious breaking and entering of pharmacy and grill—felonious larceny—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury in a prosecution for felonious breaking or entering of a pharmacy and a grill and felonious larceny of property therefrom where it tended to show that on the night that a pharmacy

break-in occurred, defendant told his nephew that "he wanted some good drugs"; he left his mother's home shortly thereafter carrying a hammer; within hours after the break-in, accomplished by knocking out glass in the front door and kicking it in, defendant showed his nephew a bag bearing the name of the pharmacy which he had hidden in a creek bank and which contained items identical to those which had been taken from the pharmacy; a pill bottle, which the pharmacist identified as having been missing after the break-in, was found in the same wooded area where defendant had showed the pharmacy bag to his nephew; defendant was found in possession of cigarettes with the tax i.d. number assigned to the grill which was broken into; and defendant was found in possession of coins consistent with those taken from the grill during the break-in.

**Am Jur 2d, Burglary §§ 45, 53.**

Appeal by defendant from judgments entered 24 May 1991 by Judge Peter M. McHugh in Rockingham County Superior Court. Heard in the Court of Appeals 12 January 1993.

Defendant was charged in proper bills of indictment with two counts each of felonious breaking or entering in violation of G.S. 14-54(a), felonious larceny in violation of G.S. 14-72(b)(2) and felonious possession of stolen goods in violation of G.S. 14-72(c). The jury found defendant guilty of two counts of breaking or entering and two counts of felonious larceny, and the trial court entered judgments sentencing defendant to four consecutive ten-year prison terms. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Teresa L. White, for the State.*

*David F. Tamer for defendant-appellant.*

MARTIN, Judge.

Defendant's sole contention on appeal is that the trial court erred in denying defendant's motion to dismiss the charges against him. We disagree.

In ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense charged and that defendant was the perpetrator of the offense.

*State v. Odom*, 99 N.C. App. 265, 393 S.E.2d 146, *disc. review denied*, 327 N.C. 640, 399 S.E.2d 332 (1990). All evidence, whether direct or circumstantial, must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Primes*, 314 N.C. 202, 333 S.E.2d 278 (1985); *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982); *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). Circumstantial evidence is direct evidence which is indirectly applied by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred. 1 H. Brandis, *Brandis on North Carolina Evidence* § 76 (1988).

In the present case, defendant was charged and convicted of felonious breaking or entering and larceny of the Rite Aid Drug Store in Mayodan, North Carolina, and the County Line Grill in Rockingham County. The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein. *State v. Litchford*, 78 N.C. App. 722, 338 S.E.2d 575 (1986). "Larceny consists of (i) the wrongful taking and carrying away, (ii) of the personal property of another, (iii) without his consent, and (iv) with the intent to deprive permanently the owner thereof." *Odom*, at 269, 393 S.E.2d at 149.

The State offered evidence at trial tending to show that at approximately 5:45 a.m. on 7 September 1990, the manager of the Rite Aid Drug Store in Mayodan discovered that the glass was broken out of one of the front doors to the store. The Mayodan Police Department was contacted and Sergeant Richard Wright responded to the call. He observed the broken glass and noticed a large shoe print on a piece of the broken door "like someone put their foot against it and kicked it . . . ." The store manager and the pharmacist determined that ten or fifteen prescriptions which had been filled for customers on 6 September 1990 and left beside the cash register with their receipts were missing, as were some stock bottles of Valium and Tylenol with codeine. According to the pharmacist, the stock bottles of Valium and Tylenol with codeine were not dispensed directly to customers, but were used to fill prescriptions.

On 10 September 1990, at approximately 6:55 a.m., Thomas Aaron, the owner and operator of the County Line Grill in Madison, North Carolina, arrived at his store and discovered that the glass

STATE v. MITCHELL

[109 N.C. App. 222 (1993)]

in the left front door had been shattered, and that several cartons of Marlboro cigarettes were missing, along with a number of rolls of coins. Detectives J. D. Thomas and John Oakley of the Rockingham County Sheriff's Department investigated the break-in at the County Line Grill. From conversations with Mr. Aaron, the detectives learned that Jimmie Reid and defendant had been in the store on the previous day. The officers went to a trailer at the John Hall Trailer Park approximately two hundred yards from the store. The trailer was occupied by defendant's girlfriend, Martha Marr. After being admitted to the trailer by Ms. Marr, the officers observed empty Marlboro cigarette packs on the floor, and approximately seven Rite Aid prescription bottles on the kitchen counter, and numerous other medicine bottles on the floor and in the living room.

Detectives Thomas and Oakley then proceeded to defendant's mother's home where they spoke with defendant. Defendant denied any knowledge about the break-in or about any items which had been stolen from the store. Detective Thomas asked if defendant had any objection to his asking defendant's mother for permission to look around the house, and defendant stated that he would rather the officer did not. Nevertheless, Detective Thomas asked defendant's mother for permission to look around. Defendant became very agitated and told his mother not to permit the search unless the officers got a search warrant. Detective Thomas advised defendant that he would obtain a search warrant and return, at which point defendant went into his bedroom and brought out a suitcase. Defendant, however, denied any knowledge of how the suitcase, which contained a pillow case filled with rolls of coins, loose change, eight full cartons of Marlboro cigarettes and forty-eight individual packs, had gotten into his room. The cartons and packages of cigarettes were stamped with a state sales tax number assigned to the County Line Grill for identification purposes, and the change was consistent with what Mr. Aaron had reported stolen in the break-in. Detective Thomas acknowledged, however, that while these items were consistent with the items taken from the County Line Grill during the break-in, there was no way of knowing if the cigarettes were lawfully purchased or stolen, or whether or not the change had been stolen.

Several days after these events, as a result of an anonymous telephone call concerning the break-in at the Rite Aid Drug Store, Captain Rick Anderson of the Mayodan Police Department spoke

with Jimmie Reid, defendant's nephew, who lived next door to defendant's mother (Reid's grandmother) on Mountain Loop Road. Captain Anderson then conducted a search of the wooded area behind defendant's mother's home, and found a Tylenol with codeine bottle and another pill bottle, both bearing labels with the store number of the Mayodan Rite Aid Drug Store which had been broken into on 7 September 1990. The store manager identified both bottles as having come from the store, although he could not say how they had been removed from the store.

The State also offered the testimony of Jimmie Reid, who stated that during the early morning hours of 7 September 1990, he had been with defendant and Martha Marr in defendant's bedroom at his mother's home talking and smoking cigarettes. Reid testified that defendant said "he wanted some good drugs. Some morphine, codeine, or valium, or something like that." Reid left and went next door to the house where he lived. He returned to defendant's mother's house around 2:30 a.m. and met defendant and Martha Marr as they were leaving. Reid asked defendant where he was going, but he did not answer. Reid gave defendant some money to buy some beer. Approximately fifteen to twenty seconds later, defendant came back inside the house to get a hammer.

Reid stayed at defendant's mother's house waiting for defendant to return with the beer, but defendant did not return until daybreak. Upon defendant's return, Reid asked him "what he had been into," and defendant said he had met some people at the Times Turnaround Store, and they drank the beer. Defendant went into his bedroom, and Reid saw him remove a bottle of cough syrup from his pocket. At defendant's request, Reid followed him outside into the backyard and through the woods to a creek. Defendant went up the creek bank and returned with a Rite Aid bag. Reid testified that the bag was ripped, and he could see a bottle of Tylenol with codeine and some pill bottles inside the bag. Defendant replaced the bag underneath the creek bank. Reid then returned to his house next door and went to sleep. Later that same day, Reid went back to defendant's mother's home and saw four or five Rite Aid prescription bottles in defendant's bedroom.

At approximately 6:00 p.m. that evening, Reid left with defendant and Martha Marr to go to her trailer at the John Hall Trailer Park. As they were leaving, Reid noticed a Rite Aid bag laying in defendant's mother's backyard. Reid spent that evening and

the following day and night at Martha's trailer with her and defendant. He testified that he saw pill bottles from Rite Aid at the trailer.

On Sunday evening, 9 September 1990, at approximately 8:30 p.m., Reid and defendant walked from the trailer park to the County Line Grocery "to check it out." They were in the store for about ten minutes and then returned to the trailer. They listened to the radio, and Reid went to sleep around 10:00 or 11:00 p.m. At that time, defendant was still there. Reid awoke shortly after 6:00 a.m., the following morning. He discovered that defendant was wearing his shoes, and they began to argue. Reid then walked to a telephone booth outside the County Line Grill and called his mother to come pick him up. When she arrived, Reid got into the car, and defendant asked Reid's mother if he could get a ride also. Defendant went inside Martha Marr's trailer and returned to the car carrying a suitcase. When they arrived at defendant's mother's house, defendant took the suitcase inside with him. This was the same suitcase which defendant later showed to Detective Thomas.

Augusta Asper testified for the State that she was employed to care for defendant's elderly mother, and that her first day of work was 10 September 1990. She testified that she observed empty quarter wrappers lying on the floor and an empty Rite Aid medicine bottle in defendant's bedroom. She checked the bottle to see if it belonged to defendant's mother, but the label indicated that it did not belong to any member of the Mitchell family.

Defendant contends that the State relied solely on the doctrine of recent possession to establish his guilt and that the State's evidence failed to show that any of the items which the officers recovered from him were actually stolen during either of the break-ins. He bases his argument upon the fact that neither the manager of the pharmacy nor the owner of the grill could testify with certainty how the items which were found in his possession had left their respective establishments.

In *State v. Odom*, 99 N.C. App. 265, 393 S.E.2d 146, *disc. review denied*, 327 N.C. 640, 399 S.E.2d 332 (1990), this Court stated:

> To invoke the doctrine, the State must prove: (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control

and disposition to the exclusion of others . . . and (3) the possession was discovered recently after the larceny . . . .

*Id.* at 270, 393 S.E.2d at 150, *quoting, State v. Maines*, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981). When invoked, the doctrine of recent possession permits an inference that the person in possession of recently stolen property is the perpetrator of the larceny.

While relying in some measure on the doctrine of recent possession, the State presented plenary additional circumstantial evidence to warrant submission of this case to the jury. On the very night that the pharmacy break-in occurred, defendant told his nephew that "he wanted some good drugs"; he left his mother's home shortly thereafter carrying a hammer; and within hours after the break-in he showed his nephew a bag bearing the name of the pharmacy which he had hidden in a creek bank and which contained items identical to those which had been taken from the pharmacy. A pill bottle, which the pharmacist identified from the name on the label as having been missing after the break-in, was found in the same wooded area where defendant had showed the pharmacy bag to his nephew. With respect to the break-in of the grill, defendant was found in possession of cigarettes with the tax identification number assigned to the grill, and coins consistent with those taken from the grill during the break-in. We believe the evidence is sufficient to permit not only the inference that the property with which defendant was found in possession was the same property that was stolen from the two break-ins, but also to permit the inference that defendant perpetrated each of the offenses with which he was charged. Therefore, we hold that there was substantial evidence in this case, both direct and circumstantial, of every element of each of the offenses charged and of defendant's guilt. The trial court did not err in denying defendant's motions to dismiss the charges against him.

No error.

Judges JOHNSON and GREENE concur.