STATE OF NORTH CAROLINA v. ANTHONY GLENN CARTER

No. COA95-558

(Filed 7 May 1996)

**1. Larceny § 68 (NCI4th)— ownership of stolen property—no variance between indictment and proof**

In a prosecution of defendant for felonious larceny of computers and computer equipment from a university, there was no fatal variance between the indictment and proof as to ownership of the stolen goods, since a professor's use of the word "my" in reference to the laboratory and computers did not indicate that they were his own personal property as opposed to the university's.

**Am Jur 2d, Larceny § 174.**

**Single or separate larceny predicated upon stealing property from different owners at the same time. 37 ALR3d 1407.**

**2. Larceny § 110 (NCI4th)— possession of recently stolen property—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury in a prosecution for felonious larceny of computers and other items under the theory of possession of recently stolen property where it tended to show that a cable and lock which were found in defendant's car were clearly and positively identified as coming from the computer lab from which the larceny occurred; they were discovered less than eighteen hours after the theft; defendant was in the area of the computer lab in the evening hours after classes had ended and grades had been turned in, the day before the theft; defendant was seen flinging items into a dumpster; the items that were on the top of the dumpster immediately after defendant deposited items into it were manuals that were of the same type used in the computer lab and were found to be missing; one of the manuals was the only such manual on campus; and defendant's witnesses gave contradictory testimony as to the time defendant left a cookout held on the date the theft probably occurred.

**Am Jur 2d, Larceny §§ 166-169.**

What amounts to "exclusive" possession of stolen goods to support inference of burglary or other felonious taking. 51 ALR3d 727.

3. Criminal Law § 1177 (NCI4th)— larceny of computer equipment by student with access code—taking advantage of position of trust—sufficiency of evidence to support aggravating factor

In a prosecution of defendant for felonious larceny of computer equipment from the university in which he was enrolled, the trial court did not err in finding as an aggravating factor for purposes of sentencing that defendant took advantage of a position of trust where defendant, an upperclassman, was entrusted with a security access code by his professor on behalf of the university with the expectation that the student would behave in a responsible and trustworthy fashion, and the access code gave defendant access to computer equipment worth thousands of dollars. N.C.G.S. § 15A-1340.4(a)(1)n.

Am Jur 2d, Criminal Law §§ 598, 599.

Appeal by defendant from judgment entered 1 November 1994 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 March 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General Kathleen U. Baldwin, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant.*

JOHNSON, Judge.

The State's evidence tends to show the following. On Friday, 7 May 1993, Derrick Clinton Tabor, Assistant Professor of Chemistry at Johnson C. Smith University went to his office in Perry Science Hall at approximately 8:00 p.m., after attending a dinner held in honor of the graduating seniors. Dr. Tabor was surprised to meet defendant in the building at that time of the evening, since classes for the semester were over and grades had been turned in. Defendant asked Dr. Tabor if he had seen Professor Nagem. Dr. Tabor testified that he then asked defendant what he was doing in the laboratory so late, and defendant stated that he had an appointment with Professor Nagem. Dr. Nagem, however, testified that he did not have an appointment with defendant. At the time of this encounter, defendant had a rolled-

up cloth carrying bag. Dr. Tabor checked the computer lab in Perry Hall and left the building. The computer lab was still secure with no missing items the next day, 8 May 1993, at approximately 4:15 p.m., according to Professor Peter Hall.

However, early on the morning of Sunday, 9 May 1993, Dr. Tabor returned to Perry Science Hall and immediately noticed that some computers were missing from the computer lab. The cables to these computers had been cut. Notably, it was later determined that other items were missing from the computer lab as well. There was no sign of forced entry, and the lab was only accessible upon using a security code. Defendant had been given the security code for his classes. Dr. Tabor immediately proceeded to the security booth and informed a security officer that a theft had occurred. Shortly after arriving at the security booth, Dr. Tabor observed defendant drive onto the campus in a small hatchback car and was able to see that there were some items in the back of the hatch that were covered by a cloth. After telling Officer Mark Eli Williams that he had seen defendant in the computer lab building on Friday night, Dr. Tabor and Officer Williams walked away from the security booth in the direction defendant had driven the car. Dr. Tabor and Officer Williams observed defendant take a box and fling it into a dumpster and drive away. Dr. Tabor and Officer Williams then looked into the dumpster and saw, on the very top, computer operations manuals for MacIntosh computers. The manuals were clean and were in plain view.

Officer Williams and Chief of Campus Security, Guy Martin, saw defendant driving toward the dumpster five minutes later, and they stopped the car. After asking defendant if they could search the car, defendant gave consent to a search of the vehicle. Officer Williams and Chief Martin found an eight-inch long cable attached to a lock in the car's back seat, as well as a mousepad and a blue and gold tablecloth in the back of the car, identical in appearance to university tablecloths. The lock had a number on it, and University officials testified that they put such numbers on the locks after buying them. Defendant was taken to the security office for questioning. At that time, defendant gave consent for campus security to search his dorm room, but no computers were found there. A search was conducted of the car belonging to the parents of defendant's fiance´, but nothing further was found.

Officer Williams went with Dr. Tabor and Dr. Hall to the computer lab. Dr. Tabor took keys from a desk in the lab and one of the keys fit

the lock attached to the eight-inch long cable found in defendant's car. The used value of the computers missing as of the date of the trial was $3,492.00.

Defendant, as well as a number of family members and friends, testified on his behalf. Defendant testified that on Friday, 7 May 1993, he went to Perry Science Hall to find his senior advisor, Dr. Nagem, because he found out at approximately 3:30 or 4:00 p.m. that he had failed a class and would not be able to graduate. A friend of defendant, Gary Hunter, testified that he told defendant that he had seen Dr. Nagem leaving campus a short time earlier. Defendant denied telling Dr. Tabor that he had an appointment with Dr. Nagem. According to defendant, when he could not locate Dr. Nagem, he left Perry Science Hall.

Various witnesses testified as to defendant's whereabouts on Saturday, 8 May 1993. Defendant testified that he arrived at a cookout held in his honor between 3:30 and 4:00 p.m., and that he left the cookout between 7:00 and 8:00 p.m. However, two of defendant's witnesses, including his mother, testified that defendant did not leave the cookout before 9:00 p.m. Defendant's fiancé, Audrey Burks, left the cookout around 6:00 p.m. with her parents. Defendant testified that, after leaving the cookout, he went to his friend Gary Hunter's room and stayed there until approximately 10:15 p.m., at which time he went to the Student Union to play cards with friends. Defendant testified that he later spent time with his fiance´ on campus and then the two drove to his grandmother's house to spend the night.

Defendant's fiance´, Ms. Burks, testified that she saw defendant later that night (early Sunday morning) between 12:00 and 12:30 a.m., when she went to the Student Union. She was upset that defendant was playing cards and walked out of the union. Defendant followed her a few minutes later. The two stayed outside until approximately 2:00 a.m., at which time Ms. Burks went to her dorm to pick up some clothes and the two left campus in defendant's car.

Mr. Herbert Gidney, Jr., Assistant Director of the Student Union, testified that the card game broke up around 11:45 p.m. and that he saw Ms. Burks come out of her dorm room at around 2:00 a.m.

According to Ms. Burks, she and defendant went to her parent's motel room knocked on the door, but did not get an answer, at which time they proceeded to defendant's grandmother's house. Defendant testified that they left campus and went to his grandmother's house where they spent the night together. Defendant and Ms. Burks denied

STATE v. CARTER

[122 N.C. App. 332 (1996)]

that defendant threw computer manuals into the dumpster. Ms. Burks testified that they threw away a comic book, papers, a Sprite can, and a few other things. Defendant testified that they threw away University manuals, old textbooks and old test scores.

On 1 November 1994, defendant was found guilty of felonious larceny and sentenced to a term of imprisonment of five years. This sentence was suspended and defendant was placed on supervised probation for a period of four years. Defendant appeals.

Defendant first argues that the trial court erred in denying his Motion to Dismiss at the close of all of the evidence where the evidence was insufficient for a rational trier of fact to find each and every element of the crime charged beyond a reasonable doubt.

In deciding whether a Motion to Dismiss should be granted, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). All of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983); *State v. Mitchell*, 109 N.C. App. 222, 224, 426 S.E.2d 443, 444 (1993).

Regardless of whether the evidence is circumstantial or direct, the test for sufficiency of the evidence to withstand a Motion to Dismiss is the same. *State v. Quick*, 106 N.C. App. 548, 553, 418 S.E.2d 291, 295, *disc. review denied*, 332 N.C. 670, 424 S.E.2d 415 (1992). "If the evidence presented is circumstantial, 'the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.' " *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (emphasis omitted). Thus, the evidence presented at trial in its entirety must be considered in assessing whether the trial court properly denied defendant's Motion to Dismiss. *State v. McWilliams*, 277 N.C. 680, 687, 178 S.E.2d 476, 479 (1971).

Defendant was charged and subsequently convicted of felonious larceny of three MacIntosh personal computers, two Quantum computer hard drives, one Conner computer hard drive, one computer monitor, one modem, two boxes of floppy disks, four computer man-

uals, one cable and lock, one computer mouse pad, and one table-cloth from Johnson C. Smith University. The essential elements of felonious larceny are: (1) the wrongful taking and carrying away, (2) of the personal property of another, (3) without his consent, and (4) with the intent to deprive permanently the owner thereof. *Mitchell,* 109 N.C. App. at 224, 426 S.E.2d at 444; *see* N.C. Gen. Stat. § 14-72(a) (Cum. Supp. 1995).

Defendant contends that (1) there was a fatal variance between who was alleged to own the cable and lock in the indictment and the evidence produced at trial as to the ownership of the cable and lock; and (2) that the evidence concerning other items alleged to have been stolen, taken singly, are insufficient for the case to have been presented to the jury.

**[1]** Defendant's first contention that there was a fatal variance to the allegation of the property owner in the indictment and the evidence presented at trial is wholly without merit. The evidence presented at trial revealed that Dr. Peter M. Hall, Professor of Chemistry and Physics, testified that the cable and lock were of the type used in the school laboratory, and that the cable came from his computer in the laboratory. Defendant's allegation that Dr. Hall's reference to the laboratory and computers as his, using the word "my" indicated that it was his own personal property, and not the University's is without merit.

**[2]** Defendant next contends that the evidence was insufficient under the doctrine of recent possession to show that he stole the items. We disagree. The State's evidence considered in its entirety and in the light most favorable to the State shows that more than adequate evidence was presented to establish that the doctrine of recent possession was applicable.

The doctrine of recent possession of stolen property "allows the jury to presume that the possessor of stolen property is guilty of larceny." *State v. Callahan,* 83 N.C. App. 323, 325, 350 S.E.2d 128, 130 (1986), *disc. review denied,* 319 N.C. 225, 353 S.E.2d 409 (1987) (citing *State v. Williamson,* 74 N.C. App. 114, 327 S.E.2d 319 (1985)). The State is required to prove: "(1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others . . . and (3) the possession was discovered recently after the larceny . . . ." *State v. Maines,* 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981).

**STATE v. CARTER**

[122 N.C. App. 332 (1996)]

Defendant argues that the mousepad and the tablecloth were not sufficiently identified as stolen property. It has been recognized that the fruits of the crime must be firmly established before the presumption of recent possession will apply. *State v. Jones*, 227 N.C. 47, 49, 40 S.E.2d 458, 460 (1946). Nevertheless, "[i]t is not necessary that stolen property be unique to be identifiable. Often stolen property consists of items which are almost devoid of identifying features, such as coins and goods which are mass produced and nationally distributed under a brand name." *State v. Crawford*, 27 N.C. App. 414, 415, 219 S.E.2d 248, 249, *disc. review denied*, 288 N.C. 732, 220 S.E.2d 621 (1975). Other evidence presented at trial may be used to establish the identity of the stolen items. *Id.* Further, this Court has held that all of the stolen goods were sufficiently identified when two of the items could be positively identified. *See State v. Owens*, 75 N.C. App. 513, 331 S.E.2d 311, *disc. review denied*, 314 N.C. 546, 335 S.E.2d 318 (1985) (finding that evidence as to all of the items was sufficient to withstand a Motion to Dismiss where currency, change, checks countersigned with the cashier's name, food stamps, coupons for hot dogs and diapers stolen from supermarket; and later currency, food stamps, check with cashier's name were found, but cashier was unable to identify the currency). *See also State v. Hales*, 32 N.C. App. 729, 233 S.E.2d 601, *disc. review denied*, 292 N.C. 732, 235 S.E.2d 782 (1977).

In the case *sub judice*, the evidence presented by the State showed: that the cable and lock which were found in defendant's car were clearly and positively identified as coming from the computer lab from which the larceny occurred; the cable and lock were discovered less than eighteen hours after the theft; defendant was in the area of the computer lab in the evening hours after classes had ended and grades had been turned in, the day before the theft; that defendant was seen flinging items into a dumpster; that the items that were on the top of the dumpster immediately after defendant deposited items into it, were manuals that were of the same type used in the computer lab and were found to be missing; that one of the manuals was the only such manual on campus according to Dr. Hall; and that defendant's witnesses gave contradictory testimony as to the time that defendant left the cookout held on the date that the theft probably occurred. Thus, there was sufficient evidence to submit to the jury and sufficient evidence from which the jury could have found that defendant had committed the crime, as accused. Accordingly, the trial court did not err in denying the Motion to Dismiss.

Defendant next argues that the trial court erred in instructing the jury on the doctrine of recent possession and on actual and constructive possession. It is well-established that "the trial judge should not give instructions which present to the jury possible theories of conviction not supported by the evidence." *State v. Odom*, 99 N.C. App. 265, 272, 393 S.E.2d 146, 150, *disc. review denied*, 327 N.C. 640, 399 S.E.2d 332 (1990) (citing *State v. Taylor*, 304 N.C. 249, 274, 283 S.E.2d 761, 777 (1981), *cert denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983)). As discussed in the previous argument, substantial evidence existed to support the presumption created by the doctrine of recent possession; therefore, this argument is without merit.

**[3]** Defendant's final argument is that the trial court erred in finding as an aggravating factor for purposes of sentencing that defendant took advantage of a position of trust. Pursuant to North Carolina General Statutes § 15A-1340.4(a)(1)n (1988), a trial judge may increase a term of imprisonment beyond the presumptive term if the trial judge finds that "[t]he defendant took advantage of a position of trust or confidence to commit the offense." Defendant argues that this aggravating factor is predicated on a friendship or familial relationship, not where the victim was a legal entity or corporation. *See State v. Hammond*, 118 N.C. App. 257, 454 S.E.2d 709 (1995) (providing that aggravating factors are usually found as to familial relationships and when the relationship between the defendant and the victim was one of best friends, not when the relationship between the defendant and the victim was that of drug dealer and customer). Thus, defendant argues that the relationship between defendant student and the University was not one of trust or confidence which caused the University to rely upon defendant. Defendant's argument is unpersuasive.

The instant action does not involve a relationship where the victim and defendant are involved in a criminal conspiracy, such as a drug dealer and buyer as in *State v. Erlewine*, 328 N.C. 626, 403 S.E.2d 280 (1991), nor does it involve a situation where a relationship had just begun or did not exist. In this case, an upperclassman was entrusted with a security access code by his professor on behalf of the University with the expectation that the student would behave in a responsible and trustworthy fashion. The access code gave defendant access to computer equipment worth thousands of dollars. Accordingly, defendant took advantage of the trust and confidence given to him by the University. Thus, this argument is without merit.

For the foregoing reasons, defendant received a fair trial, free of prejudicial error.

No error.                                              '

Judges MARTIN, JOHN C. and McGEE concur.