An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1045
NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

    v.

LARRY MCMILLAN

Hoke County
Nos. 12 CRS 895, 12 CRS 50141,
      13 CRS 229

Appeal by Defendant from judgment entered 16 April 2013 by Judge Claire V. Hill in Superior Court, Hoke County. Heard in the Court of Appeals 29 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Thomas J. Campbell, for the State.*
>
> *Gerding Blass, PLLC, by Danielle Blass, for Defendant-Appellant.*

McGEE, Judge.

Larry McMillan ("Defendant") appeals from judgment imposed upon jury convictions of felony breaking or entering, larceny of a firearm, possession of a firearm by a felon, and habitual breaking or entering. Defendant was sentenced to an active term of a minimum of thirty-eight months and a maximum of fifty-eight months. Defendant presents two issues on appeal: (1) whether

the trial court erred by failing to submit the lesser-included offense of misdemeanor breaking or entering; and (2) whether the trial court erred by failing to order, *sua sponte*, a hearing to evaluate Defendant's competence to stand trial. We hold the trial court did not err.

The State's evidence tends to show that on 30 January 2012, Santana Marie Woods ("Ms. Woods") stopped by the home of her parents (the house) and heard a noise coming from within the house. Ms. Woods walked around the outside of the house and saw Defendant, her first cousin, sticking his head out of the attic. Ms. Woods called 911. As Ms. Woods waited for law enforcement officers to arrive, she saw Defendant coming down a ladder outside the house. Ms. Woods chased Defendant until he ran into the woods. The doors to the house were locked and Ms. Woods used her key to open the doors to allow law enforcement officers to enter the house.

Sergeant Tracy Grady ("Sergeant Grady") of the Hoke County Sheriff's Department entered the house with Ms. Woods. Sergeant Grady observed that the ladder to the attic was down and that a twelve-gauge shotgun was laying near the stairs.

Ronnie Woods, Defendant's uncle and the owner of the house, testified that Defendant did not have permission to enter the

house that day nor to take or remove anything from the house. Ronnie Woods further testified that the shotgun found near the stairs was ordinarily stored under his bed and that a piece of plywood was affixed to the inside of the attic window.

At trial, Defendant testified he entered the house in which he formerly resided with his uncle and aunt, to get partially-smoked cigarettes that he knew his uncle kept in ashtrays. Defendant admitted he climbed a ladder to enter the house through the attic and that he took $5.00 in change from a basket on a dresser. Defendant denied removing the shotgun from beneath the bed.

At the charge conference, the trial court denied Defendant's request to submit the lesser-included offense of misdemeanor breaking or entering to the jury. Defendant argues there is evidence in the record, in the form of his testimony indicating he did not enter the house with the intent to steal anything, to support submission of the instruction.

Arguments on appeal "challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "An instruction on a lesser-included offense must be given only if the evidence would permit the jury

rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002).

"The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Mitchell*, 109 N.C. App. 222, 224, 426 S.E.2d 443, 444 (1993). Misdemeanor breaking or entering is a lesser-included offense and entails the breaking or entering of a building without the intent to commit a felony or larceny. *State v. Dozier*, 19 N.C. App. 740, 742, 200 S.E.2d 348, 349 (1973), *cert. denied*, 284 N.C. 618, 201 S.E.2d 690 (1974). If an indictment alleges a defendant broke and entered a building with the intent to commit larceny, and if there is no evidence of any non-felonious or non-larcenous purpose for the breaking or entering, an instruction as to misdemeanor breaking or entering is not required. *State v. Hamilton*, 132 N.C. App. 316, 321-22, 512 S.E.2d 80, 85 (1999).

In the present case, the indictment charged that Defendant entered a building with the intent to commit larceny. The crime of larceny consists of the taking and carrying away of another's property without that person's consent and with the intent to

appropriate it to the taker's own use. *State v. Bowers*, 273 N.C. 652, 655, 161 S.E.2d 11, 14 (1968). Defendant's own testimony established that he intended to take partially-smoked cigarettes from an ashtray inside the house and convert them to his own use. All of the evidence established an entry with the intent to commit larceny. We hold the trial court did not err by denying the request for the instruction.

Defendant next contends the trial court should have, *sua sponte*, ordered a hearing to determine Defendant's competence to stand trial. Defendant concedes that, although there is no evidence in the record that he had a prior mental health diagnosis or history of mental illness, the trial court should have held a hearing based upon Defendant's conduct at trial.

The conduct upon which Defendant's argument is based occurred as the trial court recessed at the end of the day, outside the presence of the jury. Defendant's counsel advised the trial court that Defendant had refused plea offers and that, against the advice of counsel, Defendant desired to address the trial court. The following then transpired:

> THE COURT: All right. Mr. McMillan, stand up please, sir. Before you say anything – I would remind you that, before you say anything, anything you say can and will be used against you. And evidently your counsel has advised you not to say

anything.

What is it – but you need to think about that as to whether or not you wish to say anything at this time.

THE DEFENDANT: Yeah. I'm not signing s---. And I –

THE COURT: Excuse me –

THE BAILIFF: Sir, watch your language.

THE COURT: -- Mr.McMillan.

THE DEFENDANT: That paper –

THE COURT: Mister – Mister –

THE DEFENDANT: No. I -

THE COURT: Mr. McMillan –

THE DEFENDANT: They ain't got no fingerprints. You ain't getting my –

THE COURT: Mr. McMillan, hush.

THE DEFENDANT: I'm telling you what it is.

THE COURT: Mr. McMillan, do you want me to hold you in contempt of court right now?

THE DEFENDANT: I don't care what you do, man. You ain't doing nothing. You ain't coming up with no phony-a-- m-----f------- papers, no –

THE COURT: Mr. McMillan, you are disrupting court. You are now held in contempt of court for the language and disrupting court. You will be serving 30

days. If this continues we will try this case without you being present.

THE DEFENDANT: That's what you do then.

THE COURT: Mr. McMillan, all you have to do is cooperate and be polite. You wouldn't do this with your grandmother sitting here, would you? And she just –

THE DEFENDANT: Why do I –

THE COURT: And she just walked right out of the courtroom.

THE DEFENDANT: She can walk right back in here, and then I can do it right here in front of her. Now, you gonna use them pictures? Because I have not touched no f------ gun.

THE COURT: Mr. McMillan –

THE DEFENDANT: You can Mr. McMillan all you want, bro.

THE COURT: All right. Contempt, another 30 days. Sixty days. Take him out.

THE DEFENDANT: I'll do 60 years.

THE BAILIFF: Let's go.

THE DEFENDANT: You're gonna look at them pictures where that gun was loaded –

**(The defendant was escorted out of the courtroom.)**

MR. JOHNSON: Your Honor, for the record, I did do what I believe was due diligence in discussing with his grandmother. In a prior health history, she

indicated he had never taken any psychiatric meds and only received counseling related to some grief. But essentially he had no commitments, no involuntary commitments.

THE COURT: All right. So what are you saying, Mr. Johnson? You need to turn your microphone on, please.

MR. JOHNSON: Just relating –

THE COURT: I understand. But are you – are you trying to say that you have a question as – that – as to his competency and his ability to proceed at trial?

MR. JOHNSON: Based upon this, yes. I've had a question.

THE COURT: All right. Well, if you've had a question, why haven't you previously done it and filed a motion in order to have him evaluated?

MR. JOHNSON: Well, I had a question, and I resolved it as being – him being competent for trial. He's been difficult to deal with.

THE COURT: Well, there's a difference between difficult to deal with and a mental health issue. So –

MR. JOHNSON: And I – as I said, I did discuss with his grandmother whether he had any involuntary[y] commitments, whether he had any psychiatric treatment, things of that nature. And she indicated, no, that he never – he's, I believe, 27, 28 years old – that he's never had anything in the way of that sort of treatment.

I found his behavior difficult but – and I had, you know, some conversations with

a number of folks.  And it appeared as though he was competent to stand trial.

THE COURT:  So how is his conduct today any different than what it's been up until now?

MR. JOHNSON:  It's been worse today.

THE COURT:  And how do you mean "worse"?

MR. JOHNSON:  Well, he has at times been – cursed me out and not wanting to follow instruction.  But – and I've gone to meet with him most days last week.  And he was somewhat cooperative or more cooperative than he had been.

THE COURT:  But he understands the nature of the charges?

MR. JOHNSON:  He does understand the charges against him.

THE COURT:  And he's –

MR. JOHNSON:  I have made every attempt to explain them.  I'll say that.

THE COURT:  Well, he appears to understand the charges, and he appears to understand that there are no fingerprints and that – I can't remember what else he said.

And last week when you met with him, he cooperated with you in preparing for trial. Is that correct?

MR. JOHNSON:  Several days he was cooperative.  He has a different perspective on how this trial will proceed.  I have attempted to explain the procedure and

proper courtroom behavior.

THE COURT: And what did he say when you told him – or explain – attempted to explain procedure and proper courtroom behavior?

MR. JOHNSON: Well, I advised him to shave for today, and he did shave. I advised his grandmother to bring him clothes for today. He did put on those clothes. I, you know, told him not to swear, not to act outrageously in front of a jury, not – to keep his voice soft. You know, essentially I gave him a pad to write on and asked him to whisper. I informed him that the speakers were fairly sensitive, and we didn't want to cause disruption in front of the jury.

THE COURT: Did he write anything down?

MR. JOHNSON: He did not write anything down today.

THE COURT: All right. Where is his grandmother? Do you have contact with her?

MR. JOHNSON: I do.

THE COURT: All right. You need to call her, and you need to ask her to go and talk with him. You need to discuss with her how he acted after she left.

MR. JOHNSON: Yes, ma'am.

The prosecutor then stated for the record that he and Defendant's counsel had a conversation prior to trial concerning Defendant's behavior and, while counsel may have questioned Defendant's intellect, he did not question Defendant's

competency to stand trial. Defendant's counsel concurred with the prosecutor's summary of their conversation. Before officially recessing for the day, the trial court again asked counsel to speak with Defendant's grandmother.

The next morning the trial court addressed Defendant:

> THE COURT: Mr. McMillan, I know that you were upset yesterday, and I understand that this can be very stressful for you. But I want to give you the opportunity to remain in the courtroom because I think it's important for you to be here during your trial.
>
> Do you understand?
>
> THE DEFENDANT: Uh-huh.
>
> THE COURT: And so as long as you behave properly and conduct yourself properly – you've got a notepad. You can take notes, and you can pass those to Mr. Johnson. And as long as you, you know, act properly in front of the jury, then we'll be fine. But if at any point in time you become disruptive, then we have two options. Either you will be restrained or – and I don't want to do that. I don't want to do either of these two things. I want you to be here with us in this courtroom.
>
> Do you understand that?
>
> THE DEFENDANT: Uh-huh.
>
> THE COURT: Or if it's – if it becomes necessary, I may have to enter an order that you be removed from the courtroom. And then you would be watching the trial on closed-circuit television. Now, those are two

options that I don't want to have to go to.

Do you understand that?

THE DEFENDANT: (Nodding head up and down.)

THE COURT: Do I have your promise – and your grandmother's here today.

Do I have your promise that you're going to act properly here today during this trial?

THE DEFENDANT: Yeah.

THE COURT: Okay. If at any time you feel like you need a break, just let Mr. Johnson know. He'll bring it to my attention. Okay? Is that fair?

THE DEFENDANT: (Nodding head up and down.)

THE COURT: Do we have an agreement before we bring the jury in? Yes or no?

THE DEFENDANT: Yes.

The trial court then brought in the jury and resumed the trial.

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C. Gen. Stat. § 15A-1001(a) (2013). Our Supreme Court has

stated:

> [A] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent. In enforcing this constitutional right, the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

*State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221, *cert. denied*, 552 U.S. 997, 169 L. Ed. 2d 351 (2007) (internal quotation marks and citations omitted). Relevant indicators of a possible need for further hearing include evidence of a defendant's irrational behavior, his demeanor at trial, or a prior medical opinion as to defendant's competency. *Drope v. Missouri*, 420 U.S. 162, 180, 43 L. Ed. 2d 103, 118 (1975).

> [A]ppellate courts must carefully evaluate the facts in each case in determining whether to reverse a trial judge for failure to conduct *sua sponte* a competency hearing where the discretion of the trial judge, as to the conduct of the hearing and as to the ultimate ruling on the issue, is manifest.

*State v. Staten*, 172 N.C. App. 673, 682, 616 S.E.2d 650, 656-57 (2005).

The trial court, by not conducting a formal hearing, *sua sponte*, into Defendant's competence to stand trial, did not abuse its discretion. The record demonstrates that Defendant

had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and ha[d] a rational as well as factual understanding of the proceedings against him." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221. The trial court addressed Defendant and determined Defendant had the ability to follow instructions and to understand the nature of the charges and the proceedings. At no time did Defendant indicate, nor does anything in the record suggest, that he did not understand the trial court's questions or instructions. Defendant had been mostly cooperative with counsel, had followed counsel's instructions to shave and wear appropriate clothing, and had answered the trial court's questions. Information before the trial court shows, at most, that Defendant may have received counseling at one time in his life to help him deal with grief he was experiencing. The record does not show Defendant had any prior history of mental illness or psychiatric commitments.

No error.

Judges ELMORE and DAVIS concur.

Report per Rule 30(e).